[No. B223242. Second Dist., Div. One. Mar. 30, 2011.]

In re ANTHONY G., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
E.U., Defendant and Appellant.

**COUNSEL**

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**CHANEY, J.**—The juvenile court adjudged minor Anthony G. a dependent child of the court pursuant to Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (g) (no provision for support).[1] Biological father, E.U., appeals from the juvenile court's jurisdiction and disposition orders as to Anthony pursuant to section 300, subdivision (g),

---

[1] Unless otherwise designated, statutory references are to the Welfare and Institutions Code.

claiming the evidence was insufficient to support the juvenile court's finding of jurisdiction. We conclude the juvenile court's finding that Anthony was a person described under section 300, subdivision (g) was not supported by substantial evidence because the record does not show Anthony was left without provision for support. We reverse the juvenile court's jurisdiction and disposition orders as they pertain to E.U. but in all other respects affirm.

## BACKGROUND

Anthony's Mother (Mother), Anthony, and Mother's younger son, Brandon, Jr., lived with Anthony's maternal grandmother (Grandmother) in July 2009.[2] Anthony, born in February 2007, was two years old. Brandon, Jr., born in May 2009, was two months old. Brandon, Jr.'s father, Brandon, Sr., did not live with the family.[3] In July 2009, Los Angeles County Department of Children and Family Services (DCFS) received a referral that Brandon, Sr., had punched, hit and " 'dog walked' " Mother, who was then 17 years old. After that incident, Grandmother told Brandon, Sr., not to visit the family home. She suspected that Mother continued to see Brandon, Sr. DCFS informed Mother, Grandmother, and Brandon, Sr., who was 20 years old, that Brandon, Sr., was not to contact Mother until she turned 18 years old in November 2009.

During visits by DCFS to the home, Anthony was observed to be dressed and groomed appropriately and did not display any marks or bruises on his body. He was developmentally on target and had received his immunizations. During one visit, Mother was out buying groceries and diapers for the children. DCFS reported that Anthony's father was unknown and Anthony's birth certificate did not indicate a father's name.

On December 10, 2009, Brandon, Sr., went to the residence and engaged in a physical altercation with Grandmother, during which Grandmother threw hot water on him and spat in his face. On December 31, 2009, DCFS filed a dependency petition alleging jurisdiction as to Anthony under section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (g) (no provision for support). As to subdivision (g), the petition alleged, in pertinent part, that "The child Anthony G[.'s] father Ton[y G.] failed to provide the child with the necessities of life including food, clothing, shelter and medical care."

Mother informed the juvenile court on December 31, 2009, that E.U., not Tony G., was Anthony's father. After initially stating that E.U. had contact

---

[2] Brandon, Jr., is not a subject of this appeal.

[3] Mother and Brandon, Sr., did not appeal.

with Anthony only once since his birth, Mother corrected herself to state that E.U. had contact with Anthony three or four times. She also provided E.U.'s phone number to DCFS.

When interviewed by DCFS in January 2010, E.U. admitted that he had previously had sex with Mother, but denied paternity. He demanded a paternity test "because [he was] tired of her calling [him] and saying that [he was] the father of her child . . . ." Tony G. also denied paternity.

On February 4, 2010, at the continued hearing on the dependency petition, the juvenile court appointed an attorney to represent E.U. and ordered him to submit to a paternity test. On February 19, 2010, after her counsel characterized Mother as "non-offending," Mother submitted to the jurisdiction of the juvenile court. Brandon, Sr., submitted on the petition on the basis of the social worker's reports. DCFS requested the juvenile court conform to proof the section 300, subdivision (g) allegation to identify E.U. instead of Tony G. as Anthony's father. E.U.'s attorney objected to the amendment on the basis that there was no proof that E.U. was the father of Anthony.

The juvenile court ordered the section 300, subdivision (g) allegation amended to name E.U. on the basis that E.U., whom Mother identified as the alleged father of Anthony, was not providing for him. E.U.'s counsel then requested that the juvenile court strike the section 300, subdivision (g) allegation. DCFS argued that E.U.'s support was necessary, he had never provided for Anthony, and Mother was struggling to provide support. Mother nodded affirmatively. The juvenile court refused to strike the section 300, subdivision (g) allegation against E.U.

The juvenile court found that Brandon, Sr.'s waiver of rights was freely and voluntarily made and denied E.U.'s motion to dismiss the amended section 300, subdivision (g) allegation. The court sustained the section 300, subdivision (b) allegation of the petition that on December 10, 2009, Brandon, Sr., was under the influence of alcohol and engaged in a violent physical altercation with Grandmother in which Grandmother threw hot water at Brandon, Sr.'s face and spat at him, in the presence of the children. The court sustained the section 300, subdivision (g) amended allegation of the petition that E.U. failed to provide the child with the necessities of life, including food, clothing, shelter and medical care.

The juvenile court declared the minors dependent children of the court and placed them with Mother under the supervision of DCFS. The court ordered family maintenance services for Mother, including requiring her to attend a DCFS-approved program of parent education, take six random drug tests, and attend "a DCFS approved program of individual counseling to address the

case issues including domestic violence." The court ordered that if Mother missed or tested positive on a drug test, she would be required to attend a full drug rehabilitation program. The court also ordered family reunification services for Brandon, Sr.

At a continued progress hearing on April 16, 2010, DCFS submitted the results of E.U.'s paternity test, which established that E.U. is Anthony's biological father. The juvenile court determined E.U. to be Anthony's biological father.

In a supplemental report, DCFS reported that E.U. wanted another paternity test done, denied awareness of being Anthony's father, and denied the use of drugs. The report also stated that in 2008 E.U. was arrested for driving under the influence and possession of an illegal firearm, for which he served nine months in jail and was released on three years' probation. On April 29, 2010, on DCFS's recommendation and E.U.'s counsel's representation that E.U. was willing to enroll in parenting classes and complete six drug tests, the juvenile court ordered E.U. to attend a parenting program, submit to six weekly drug and alcohol tests, and complete a substance abuse program if he missed a test or tested positive. The juvenile court also ordered unmonitored visits for E.U. with Anthony.

## DISCUSSION

E.U. asserts that the juvenile court's order finding jurisdiction under section 300, subdivision (g) should be reversed because no substantial evidence supports it. We agree.

DCFS initially contends that to the extent E.U.'s challenge is to the sufficiency of the amended petition rather than to the sufficiency of the evidence, he has forfeited the right to make such a challenge by not raising the issue below, citing *In re James C.* (2002) 104 Cal.App.4th 470, 480–481 [128 Cal.Rptr.2d 270] (a parent waives the right to challenge the sufficiency of the allegations in a dependency petition on appeal after failing to raise the issue by demurrer in the juvenile court). But E.U. does not attack the facial validity of the petition, he asks us to determine whether substantial evidence supports the juvenile court's finding that Anthony is a person described in section 300, subdivision (g). Accordingly, E.U. has not forfeited his argument on appeal.

DCFS next contends that we need not review E.U.'s sufficiency argument based on section 300, subdivision (g) because jurisdiction over Anthony will continue under section 300, subdivision (b). DCFS cites *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [90 Cal.Rptr.3d 44], for the proposition that a

reviewing court can opt to affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction enumerated in the petition is supported by substantial evidence. We are not persuaded that we should refrain from addressing the merits of E.U.'s appeal.

" ' "When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]" ' [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259 [117 Cal.Rptr.3d 527].)

As pertinent here, a jurisdictional finding under section 300, subdivision (g) requires DCFS to show that "[t]he child has been left without any provision for support . . . ."

DCFS makes no attempt to show that Anthony was left without any provision for support. On the contrary, its investigation revealed that Anthony appeared to be dressed and groomed appropriately, had no observable marks or bruises, was developmentally on target for his age, had received his immunizations, and lived in stable housing with Mother and Grandmother. DCFS argues only that dependency jurisdiction is proper because the support Anthony enjoyed was not provided by E.U., his biological father. The argument is without merit.

Mother and Grandmother provided Anthony with support. That E.U. failed to contribute to that support does not justify jurisdiction under section 300, subdivision (g). (*In re Janet T.* (2001) 93 Cal.App.4th 377, 392 [113 Cal.Rptr.2d 163]; *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1319–1320 [49 Cal.Rptr.2d 139].) Dependency jurisdiction is invoked to further the welfare of neglected and abused children, not to determine which parent must provide child support. (*In re John W.* (1996) 41 Cal.App.4th 961, 975 [48 Cal.Rptr.2d 899] [child support orders are the province of the family law court, not the dependency court].)

In *In re Matthew S.*, the court concluded that there was insufficient evidence supporting the juvenile court's finding of jurisdiction under section 300, subdivision (g) against the absent father because there was no evidence of "malnutrition, deprivation of shelter, clothes or medical care" for the

minor. (*In re Matthew S., supra*, 41 Cal.App.4th at p. 1320.) In *In re Janet T.*, the court reversed the juvenile court's order sustaining the allegation of the petition asserted under section 300, subdivision (g) against the father, even though it was factually supported, because it had reversed the other sustained allegations against the mother. (*In re Janet T., supra*, 93 Cal.App.4th at p. 392.) The court reasoned "[i]t would be anomalous to permit the fact of an absent father to be the sole justification to assert jurisdiction in this case and to detain the children from their custodial parent." (*Ibid.*)

DCFS attempts to distinguish *In re Matthew S.* on the ground that there, the father, though he was "erratic about sending" child support payments, had at least made some payments, whereas here, E.U. contributed nothing to Anthony's support. (*In re Matthew S., supra*, 41 Cal.App.4th at p. 1315.) The point is immaterial because no evidence suggests E.U.'s contribution was necessary. DCFS attempts to distinguish *In re Janet T.* on the ground that there, the father's whereabouts were unknown, whereas here E.U.'s whereabouts were known. This distinction, too, makes no difference.

DCFS argues jurisdiction is supported by *In re J.O.* (2009) 178 Cal.App.4th 139 [100 Cal.Rptr.3d 276], where the court concluded that when a mother does not provide for the child's care, a father's failure to provide support can be used as justification for detention under section 300, subdivision (g). (178 Cal.App.4th at pp. 153–155.) The case is inapposite because here, Mother and Grandmother provided for Anthony's care.

The juvenile court's finding of jurisdiction under subdivision (g) of section 300 was unsupported by substantial evidence.

E.U. also contends that because he "had no reason to believe he was obligated to provide for" Anthony and there was no affirmative identification of him as the father until December 31, 2009, he cannot be said to have "left" Anthony "in any way." In support of his argument, he claims to have denied to DCFS any physical resemblance to Anthony, whom Mother had named after another man, and urges there was no evidence that Mother had told anyone that E.U. was Anthony's father. But as the discussion above indicates, which parent provides a minor's support is irrelevant for purposes of establishing jurisdiction under section 300, subdivision (g). We therefore need not reach E.U.'s argument.

█ We conclude that the juvenile court's finding that Anthony was a child as described by section 300, subdivision (g) was not supported by substantial evidence.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders as to E.U. are reversed. In all other respects, the court's orders are affirmed.

Rothschild, J., concurred.

**MALLANO, P. J.,** Dissenting.—E.U. challenges the sufficiency of the evidence as to the juvenile court's finding of jurisdiction under Welfare and Institutions Code section 300, subdivision (g) on the basis that there was no evidence that E.U. "left" Anthony G., or alternatively, that there was no evidence that Anthony was left *without provision for support.*[1] I disagree. The evidence shows that mother (Mother) was struggling to provide support for Anthony and that E.U. did not provide financial support to Anthony, was not interested in him, and had no relationship with him. And because Mother submitted to the jurisdiction of the juvenile court under section 300, subdivision (b), I conclude she was not providing good care for Anthony.

As pertinent here, a jurisdictional finding under section 300, subdivision (g) requires Los Angeles County Department of Children and Family Services "to show that '[t]he minor has been left without any provision for support . . . .' " (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1319–1320 [49 Cal.Rptr.2d 139].)

*In re J.O.* (2009) 178 Cal.App.4th 139 [100 Cal.Rptr.3d 276] is illustrative. There, the court concluded that when a mother does not provide for the child's care, a father's failure to provide support can be used as justification for detention under section 300, subdivision (g). (*In re J.O.,* at pp. 153–155.) In *In re J.O.,* the juvenile court sustained jurisdiction over the minors against the father, the mother and the mother's husband under section 300, subdivision (a) (serious physical harm, based on the mother's use of safety pins and knife to scrape ink marks off minor's skin and use of excessive physical discipline); subdivision (b) (failure to protect against the father, based on actions committed by the mother and the mother's husband); subdivision (d) (sexual abuse, based on sexual comments and fondling by the mother's husband); and subdivision (g) (no provision for support, based on the father's lack of support). (*In re J.O., supra,* 178 Cal.App.4th at p. 144.) The mother and the mother's husband stipulated to the jurisdictional findings. (*Id.* at p. 144, fn. 5.) The father, but not the mother or the mother's husband, appealed from the juvenile court's jurisdiction and disposition orders.

The *In re J.O.* court concluded that the factual finding against the father as to section 300, subdivision (b) was not supported by the evidence because

---

[1] Statutory references are to the Welfare and Institutions Code.

there was no causal nexus between the court's findings of serious injury and the findings relating to the father. (*In re J.O., supra*, 178 Cal.App.4th at p. 152.) The court concluded, however, that the evidence supported the juvenile court's finding of jurisdiction under section 300, subdivision (g). Analogizing to cases involving incarcerated parents who may be unable to provide or arrange for care of the child and assuming that section 300, subdivision (g) applies only where the parent is unable to provide or arrange care for the children at the time of the jurisdictional hearing, the court held that substantial evidence supported the conclusion that the father was incapable of providing such care because he had no relationship with the children, he displayed no interest in them, he had given them no financial support for the previous eight years, he had not lived with them for more than a dozen years, and he had ceased his rare telephone calls to them at least three years previously. (*In re J.O., supra*, 178 Cal.App.4th at pp. 153–154.)

Similarly here, E.U. had no relationship with Anthony, displayed no interest in him, and did not provide financial support. Notwithstanding the evidence that E.U. never provided support, E.U. urges that Anthony was not "left without any provision for support" because the record shows that Anthony was well groomed, dressed appropriately, and lived in stable housing with Mother and the grandmother, citing *In re Matthew S., supra*, 41 Cal.App.4th 1311, and *In re Janet T.* (2001) 93 Cal.App.4th 377 [113 Cal.Rptr.2d 163]. In *In re Matthew S.*, the court concluded that there was insufficient evidence supporting the juvenile court's finding of jurisdiction under section 300, subdivision (g) against the absent father because there was no evidence of "malnutrition, deprivation of shelter, clothes or medical care" for the minor. (*In re Matthew S., supra*, 41 Cal.App.4th at p. 1320.) In *In re Janet T.*, the court reversed the juvenile court's order sustaining the allegation of the petition asserted under section 300, subdivision (g) against the father, even though it was factually supported, because it had reversed the other sustained allegations against the mother. (*In re Janet T., supra*, 93 Cal.App.4th at p. 392.) The court reasoned "[i]t would be anomalous to permit the fact of an absent father to be the sole justification to assert jurisdiction in this case and to detain the children from their custodial parent." (*Ibid.*)

*In re Matthew S.* and *In re Janet T.*, however, differ from the present case in one significant respect: in both of those cases the courts concluded that the mother had provided good care for the children. As *In re J.O.* points out, "In *In re Janet T.* . . . the court held that a finding under section 300, subdivision (g) that the father, whose whereabouts were unknown, had failed to provide support could not be used as justification to declare the children dependents and detain them from their custodial parent, the mother, who had provided good care. To the same effect, see *In re Matthew S.* . . ." (*In re J.O., supra*, 178 Cal.App.4th at p. 153, fn. 15.)

By contrast, in *In re J.O., supra*, 178 Cal.App.4th at page 144, footnote 5, the mother stipulated to the jurisdictional findings. Similarly, Mother submitted to the jurisdiction of the juvenile court under the section 300, subdivision (b) allegation that she failed to protect the minors. And Mother was struggling to provide care for Anthony. Thus, Mother did not provide good care to Anthony, and *In re Matthew S., supra*, 41 Cal.App.4th 1311, and *In re Janet T., supra*, 93 Cal.App.4th 377, are distinguishable.

I also reject E.U.'s contention that because he "had no reason to believe he was obligated to provide for [Anthony]" and there was no affirmative identification of him as the father until December 31, 2009, he cannot be said to have " 'left' " Anthony without any provision for support. During his interview, E.U. admitted that he had sex with Mother and that he wanted Mother to stop calling him and telling him that he was Anthony's father. His denial of paternity appears to be the product of immature and wishful thinking, and I reject his argument that he did not "leave" Anthony simply because he did not choose to believe he was Anthony's father.

I therefore conclude that the juvenile court's findings that Anthony was a child as described by section 300, subdivision (g) was supported by substantial evidence.

The judgment should be affirmed.