Filed 8/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ANDREW S. et al., Persons Coming Under the Juvenile Court Law. | B268361 |
| | (Los Angeles County Super. Ct. No. DK11636) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JONATHAN G., Defendant and Appellant. | |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Reversed and remanded.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Jonathan G., the presumed father of eight-year-old Andrew S. and four-year-old Kailey J., appeals the juvenile court's October 5, 2015 jurisdiction finding pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] that he failed to provide the children with the necessities of life, placing them at substantial risk of serious physical harm or illness, and its disposition order of the same date removing the children from his and their mother's custody and ordering them suitably placed pursuant to section 361, subdivision (c). The court had previously sustained jurisdiction allegations relating to physical abuse by the children's mother, Gloria S., under section 300, subdivisions (a) (serious physical harm nonaccidentally inflicted), (b) (failure to protect) and (j) abuse of sibling).

We reverse the jurisdiction finding and removal order as to Jonathan and remand the matter for the juvenile court to reconsider Jonathan's request for custody of the children under the proper standard for noncustodial parents (§ 361.2) and in light of Jonathan's and the children's then-current circumstances. On remand the juvenile court is also to reconsider its determination the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) does not apply in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

The Los Angeles County Department of Children and Family Services (Department) received and investigated several reports that Gloria was neglecting Andrew and Kailey and had physically abused Andrew. After Gloria failed to cooperate with a voluntary services plan, which included counseling and parenting instruction, the Department detained the children on June 3, 2015 and filed a section 300 petition alleging Andrew and Kailey were at substantial risk of harm because of Gloria's physical abuse. Gloria identified Jonathan as the children's father and reported he was incarcerated in Texas following a conviction for burglary in 2012. She said he was expected to be released by September 2015.

---

[1] Statutory references are to this code unless otherwise stated.

The Department filed a first amended petition in July 2015. As to Gloria the amended petition alleged counts under section 300, subdivisions (a), (b) and (j), based on Gloria's physical abuse of Andrew by repeatedly slapping his mouth with her hand, causing a bleeding laceration and swelling to his eye; striking his chin, legs and back with a shoe; and striking him on prior occasions with hangers, shoes and her hands. The amended petition also alleged, again pursuant to section 300, subdivisions (a), (b) and (j), that Gloria had physically abused Kailey by pulling her hair and pinching her. As to Jonathan, the amended petition alleged in a single count pursuant to section 300, subdivision (b), "The children, Andrew [S.] and Kailey [S.]'s father [Jonathan G.,] has failed to provide the children with the necessities of life including (e.g., food, clothing, shelter, and medical treatment). Further, the children's father is currently incarcerated for burglary charges. Such failure to provide for the children on part of the father, [Jonathan G.] endangers the children's physical and emotional health, safety, and well being and places the children at risk of physical and emotional harm and damage."

Jonathan was interviewed by the Department's investigating social worker by telephone. He told the social worker he wanted to reunite with his children when he was released from prison. The social worker advised him to contact the Department once he was released from custody so he could be evaluated. Jonathan also indicated he might have Indian ancestry on his father's side but could not identify a tribe and said he had no further information. Although neither of his parents was alive, Jonathan informed the social worker he had three brothers and four sisters. In its combined report for the jurisdiction and disposition hearing, the Department wrote that Jonathan "remains incarcerated and is unable to provide [Andrew and Kailey] with their basic needs, which is why they were placed in foster care following their removal from their mother."

The allegations of abuse by Gloria were again amended, striking the word "repeatedly" from the counts regarding Andrew and deleting entirely the counts regarding physical abuse of Kailey. Gloria pleaded no contest to the amended allegations, and on July 28, 2015 the court sustained the allegations in the remaining

3

counts concerning her conduct. The jurisdiction hearing as to Jonathan and the disposition hearing were continued.

In early August 2015 the court found Jonathan was the presumed father of Andrew and Kailey. As of August 31, 2015 both children were placed in the home of their maternal grandmother. On September 4, 2015 the Department learned that Jonathan's release date had been extended from September 21, 2015 to October 18, 2015.

The continued jurisdiction and disposition hearing was held on October 5, 2015. Jonathan appeared by telephone. His appointed counsel, present in court, argued the subdivision (b) count as to Jonathan should be dismissed, citing *In re Anthony G.* (2011) 194 Cal.App.4th 1060, which held a jurisdiction finding under section 300, subdivision (g), requires proof the child was left without provision for support, not simply that the absent parent had not provided support for the child. Counsel noted that Jonathan believed Gloria and the maternal relatives were taking care of the children. The Department's jurisdiction/disposition report had stated Jonathan was surprised by the allegations regarding Gloria's physical abuse. The children's counsel joined in Jonathan's request, stating it appeared Jonathan had been taking care of the children before he was incarcerated. Counsel for the Department responded that Jonathan was unable to provide for the children when they were removed from mother: "Parents have to be available to provide care for their children when another parent is not available for whatever reason—death, injury, drug overdose, relapse. . . . He was not available. He had no plans of providing for them. . . . He was not there for his kids . . . ."

The juvenile court sustained the allegation as to Jonathan, explaining the Court of Appeal in *In re Anthony G.* had reversed the section 300, subdivision (g), but not the subdivision (b) count: "The failure to protect was sustained. And that's what they plead here, a failure to protect. And that's different. And that's what makes this a different case. Yes, I will acknowledge the way it was worded, it rings as a (g), but it's not a (g). It's not plead as a (g). I have to deal with the pleadings as they are made. If it was a (g), I would follow *In re Anthony G.*, and I would not sustain it. But it's not a failure to

4

provide. It's a failure to protect." The court added that Jonathan should have been in contact with Gloria while she was participating in voluntary services, learned she was not succeeding and made arrangements for the children with maternal relatives if she lost custody. That, in the court's view, was the failure to protect.

Counsel for Jonathan responded that her client could make a plan for the children with the maternal grandmother, the relative who currently was caring for them, pointing out that parents frequently make such plans when they are incarcerated. The court tersely replied, "Noted."

Turning to disposition the court declared the children dependents of the court and found, based on the true findings made, that continued placement in the home of Gloria and Jonathan "would create a substantial risk of detriment to the children's protection, physical, emotional well-being. There's no reasonable means to keep them safe without removal." The court ordered the children suitably placed with the maternal grandmother. Family reunification services were ordered for both parents.

**DISCUSSION**

1. *The Juvenile Court Erred in Sustaining the Section 300, Subdivision (b), Count as to Jonathan*

The juvenile court made a jurisdiction finding relating to Jonathan under section 300, subdivision (b), based on his alleged failure to provide Andrew and Kailey with the necessities of life and his then-current incarceration on burglary charges in Texas. That finding, as Jonathan argues and the Department now concedes, suffers from several fundamental flaws and must be reversed.[2]

---

[2] Gloria has not appealed the juvenile court's jurisdiction findings; and Jonathan acknowledges, even if we reverse the subdivision (b) finding as to him, Andrew and Kailey will remain subject to the jurisdiction of the court based solely on its findings regarding Gloria's physical abuse of Andrew. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; ""'the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent'"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].) "However, when, as here, the outcome of the appeal could be 'the difference between

First, section 300, subdivision (b), establishes as a basis for dependency jurisdiction "the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment . . . ," provided there is a substantial risk the child will suffer serious physical harm or illness as a result of that failure.  Section 300, subdivision (g), authorizes the exercise of dependency jurisdiction if "[t]he child has been left without any provision for support . . . ."  Neither provision justifies the juvenile court's assumption of jurisdiction over an otherwise well-cared-for child simply because an absent parent has not provided support.  (See *In re X.S.* (2010) 190 Cal.App.4th 1154, 1160 [reversing section 300, subdivision (b), jurisdiction finding that father had failed to provide for child where child was well cared for by mother and maternal grandmother until mother's recent abuse; father's failure to provide did not cause child to suffer harm or create risk of future harm]; *In re Anthony G.*, *supra*, 194 Cal.App.4th at p. 1065 ["Mother and Grandmother provided Anthony with support. That E.U. failed to contribute to that support does not justify jurisdiction under section 300, subdivision (g)."].)  Although Gloria's improper discipline of Andrew constituted physical abuse, the Department reported she had "adequate income and housing" and "extended family support"; there was no evidence that Andrew and Kailey at any time lacked adequate food, clothing, shelter or medical treatment or that Gloria— or the children's maternal grandmother in Gloria's absence—had otherwise failed to meet their needs.

Second, section 300, subdivision (b), which was the only jurisdiction provision pleaded in the Department's first amended petition concerning Jonathan's conduct, does not address a parent's incarceration.  Like leaving a child without any provision for

father's being an "offending" parent versus a "non-offending" parent,' a finding that could result in far reaching consequences with respect to these and future dependency proceedings, we find it appropriate to exercise our discretion to consider the appeal on the merits."  (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; see *In re Christopher M*. (2014) 228 Cal.App.4th 1310, 1316; *In re D.P*. (2014) 225 Cal.App.4th 898, 902.)

support, a parent's incarceration may provide a basis for dependency jurisdiction under section 300, subdivision (g), but only if that parent "cannot arrange for the care of the child." That is, neither incarceration alone nor the failure to make an appropriate advance plan for the child's ongoing care and supervision is sufficient to permit the exercise of jurisdiction under subdivision (g). (*In re M.M.* (2015) 236 Cal.App.4th 955, 964-965, fn. 9; *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672.) As the court of appeal explained in *In re Aaron S.* (1991) 228 Cal.App.3d 202, 208, "[S]ection 300, subdivision (g) applies when, at the time of the hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child." (See *In re S.D.* (2002) 99 Cal.App.4th 1068, 1077 ["[i]f [the mother] could *arrange for* care of [the minor] during the period of her incarceration, the juvenile court had no basis to take jurisdiction in this case"]; *In re Monica C.* (1995) 31 Cal.App.4th 296, 305 ["section 300, subdivision (g), requires only that an incarcerated parent arrange adequately for the care of the child during the period of his or her incarceration"].) As its appellate counsel now recognizes, because the Department presented no evidence that Jonathan could not arrange care while he was incarcerated, either before or after the children were detained from Gloria, it failed to satisfy its burden of proof to establish jurisdiction based on Jonathan's incarceration and his inability to arrange for the children's care. (*In re S.D.*, at p. 1078 [child protection agency has initial burden of establishing that incarcerated parent could not arrange for child's care].)

Third, the juvenile court's reasoning to the contrary notwithstanding, that the wording of the allegations concerning Jonathan "rings as a (g)," but was pleaded under subdivision (b), does not rescue the jurisdiction finding.[3] As discussed, to the extent the

---

[3] The juvenile court's attempt to distinguish the holding and analysis of *In re Anthony G.*, *supra*, 194 Cal.App.4th 1060 by observing "what they struck from *In re Anthony G.* was the (g) count, not the (b) count" rests on a misreading of the appellate court's decision. As explained during the hearing by Jonathan's counsel, the *In re Anthony G.* court reversed the juvenile court's subdivision (g) finding as to

7

first amended petition alleged Jonathan had failed to provide for the children, either before or after they were detained, the evidence presented by the Department did not satisfy its burden of proof under subdivisions (b) or (g). To the extent the juvenile court interpreted the petition to charge that Jonathan had failed to protect the children from Gloria's physical abuse, the Department never made any such allegation;[4] and Jonathan had no notice or opportunity to defend against it. (See *In re Wilford J.* (2005) 131 Cal.App.4th 742, 751 ["a parent whose child may be found subject to the dependency jurisdiction of the court enjoys a due process right to be informed of the nature of the hearing, as well as the allegations upon which the deprivation of custody is predicated, in order that he or she may make an informed decision whether to appear and contest the allegations"]; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188 ["[d]ue process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object"]; see generally *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 117-118 [juvenile court safeguarded parent's rights to procedural and substantive due process by providing him notice and an opportunity to be heard, including the right to present evidence and to confront witnesses].)

---

Anthony's absent father, E.U., because, although E.U. had not contributed to his son's support, his mother and grandmother did. Subdivision (g) was the sole basis for asserting jurisdiction over E.U. The subdivision (b) failure-to-protect finding was made as to Brandon, Sr., the father of Anthony's half-sibling, Brandon, Jr., based on a violent incident in the home between that man and the children's maternal grandmother. It was not reviewed on appeal and had nothing at all to do with the appellate court's analysis of jurisdiction based on a failure to provide support.

[4] A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing to remedy immaterial variances between the petition and proof. (§ 348; Code Civ. Proc., § 470.) However, material amendments that mislead a party to his or her prejudice are not allowed. (Code Civ. Proc., §§ 469-470; *In re Andrew L.* (2011) 192 Cal.App.4th 683, 689.) On appeal the Department concedes the juvenile court erred when it construed the subdivision (b) count concerning Jonathan as alleging a failure to protect rather than a failure to provide for the children.

2. *The Juvenile Court Erred in Ordering the Children's Removal from Jonathan Pursuant to Section 361, Subdivision (c)*

At disposition the juvenile court removed Andrew and Kailey from both Gloria and Jonathan's custody pursuant to section 361, subdivision (c), concluding, "based on the true findings made," there was a "substantial risk of detriment to the children's protection, physical, emotional well-being" if they were to continue in the home of the mother and father. Because we reverse the jurisdiction finding as to Jonathan, the court's findings cannot support a disposition order denying him custody of the children. In addition, as the Department explains in its respondent's brief, the court improperly relied upon section 361, subdivision (c), which governs the removal of children from the physical custody of a parent or guardian "with whom the child resides at the time the petition was initiated." (§ 361, subd. (c)(1).) Jonathan was a noncustodial parent; he had lived apart from the family while incarcerated for nearly three years at the time the section 300 petition was filed. Thus, his request for custody should have been assessed under section 361.2, which requires a child who has been removed from his or her custodial parent be placed with a parent with whom the child was not residing if that parent requests custody unless the court finds "that placement with that parent would be detrimental to the safety, protection or physical or emotional well-being of the child." (§ 361.2, subd. (a).)[5] On remand, if Jonathan still desires custody of Andrew and Kailey, the court is to reconsider that request pursuant to section 361.2 in light of Jonathan's and the children's then-current circumstances.

---

[5] The substantial danger finding required to remove a child under section 361, subdivision (c), and the detriment finding required to deny custody to a noncustodial parent under section 361.2, subdivision (a), are fundamentally the same—and in each case must be founded upon clear and convincing evidence. Accordingly, in most cases the error in applying the wrong statute will be harmless. (See, e.g., *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303-304.)

9

3. *The Juvenile Court's Finding That ICWA Does Not Apply Must Be Reconsidered on Remand*

On June 8, 2015 Gloria completed and filed the Judicial Council's mandatory Parental Notification of Indian Status form (ICWA-020), stating she had no Indian ancestry as far as she knew. At the detention hearing on June 11, 2015 the court found it had no reason to know that Andrew or Kailey was an Indian child within the meaning of ICWA and did not order notice to any tribe or to the federal Bureau of Indian Affairs (BIA). Jonathan, who was incarcerated, did not appear at that hearing; no counsel had been appointed for him; and as June 11, 2015 no one from the Department had spoken to him.

In the jurisdiction/disposition report prepared for the July 28, 2015 hearing, the Department stated Gloria on June 18, 2015 "denied any ICWA knowledge on the father's part." As discussed, on June 25, 2015, in a telephone interview with the Department's social worker, Jonathan stated he may have Indian ancestry on his father's side but did not know which tribe. He also stated he had no further information and that both of his parents were dead. The Department reported Jonathan had three brothers and four sisters; there is no indication the Department made any attempt to obtain contact information for any of Jonathan's siblings or to interview them to determine if they had information regarding their family's possible Indian ancestry.

Counsel appeared for Jonathan at hearings on July 28, 2015 and September 4, 2015, but Jonathan did not participate by telephone. No ICWA issue was discussed at either hearing. When Jonathan appeared telephonically on October 5, 2015, his first personal appearance in the dependency proceedings, the court made no ICWA inquiry. The record on appeal does not reflect that Jonathan ever filed a form ICWA-020 or that he was ever advised that he should do so.

ICWA provides, "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and its

right to intervene. (25 U.S.C. § 1912(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 8; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1385.)[6] Similarly, California law requires notice to the Indian custodian and the Indian child's tribe in accordance with section 224.2, subdivision (a)(5), if the Department or court knows or has reason to know that an Indian child is involved in the proceedings. (§ 224.3, subd. (d).) The circumstances that may provide reason to know the child is an Indian child include, without limitation, when a person having an interest in the child provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's parents, grandparents or great-grandparents are or were a member of a tribe. (§ 224.3, subd. (b)(1); *In re Kadence P.*, at p. 1386; see also *In re Isaiah W.*, at p. 15. ["section 224.3, subdivision (b) sets forth a nonexhaustive list of 'circumstances that may provide reason to know the child is an Indian child'"].)

In his opening brief in this court Jonathan argued his statement to the social worker that he may have Indian ancestry was sufficient to trigger ICWA's notice requirement, citing as support *In re Levi U.* (2000) 78 Cal.App.4th 191, which held notice to the BIA was required (and sufficient) based on the paternal grandmother's report she might have Indian ancestry on her deceased mother's side of the family but did not know the tribal affiliation. (*Id.* at p. 198.) In its respondent's brief the Department, although conceding error with respect to the jurisdiction finding and removal order, argued Jonathan's reference to possible Indian ancestry was insufficient to require any form of notice under ICWA. (See, e.g., *In re O.K.* (2003) 106 Cal.App.4th 152, 157 [grandmother's statement that child "'may have Indian in him,'" without more, insufficient to invoke ICWA notice requirements]; see also *In re Jeremiah G.* (2009)

_____

[6] As the Supreme Court explained in *In re Isaiah W.*, *supra*, 1 Cal.5th at page 8, "ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA. . . . [¶] Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child."

172 Cal.App.4th 1514, 1520 ["more than a bare suggestion that a child might be an Indian child" is required to trigger ICWA notice requirements].)

Following the filing of respondent's brief, Jonathan's counsel wrote this court that, in light of the parties' agreement as to the error in the juvenile court's jurisdiction finding and removal order, and to expedite return of the matter to the juvenile court, Jonathan would not pursue the ICWA notice issue in this appeal. Counsel observed, "[R]emand will give Father the opportunity to adduce additional information [on the ICWA issue], and the court can then determine the sufficiency of his showing."

We accept Jonathan's withdrawal of the ICWA notice issue but direct the juvenile court on remand to reconsider its decision that ICWA does not apply in this case and that no notice to tribes or the BIA is necessary whether or not additional information regarding Jonathan's Indian ancestry is presented. As the Supreme Court held last month in *In re Isaiah W.*, *supra*, 1 Cal.5th 1, ICWA and the corresponding provisions of California law impose an affirmative and continuing duty on the juvenile court to inquire whether the child is an Indian child. (*Id.* at p. 6.) "[A]ny finding of ICWA's inapplicability before proper and adequate ICWA notice has been given is not conclusive and does not relieve the court of its continuing duty under section 224.3(a)[7] to inquire into a child's Indian status in all dependency proceedings. [Citation.] Only after proper and adequate notice has been given and neither a tribe nor the BIA has provided a determinative response within 60 days does section 224.3(e)(3) authorize the court to determine that ICWA does not apply." (*Id*. at p. 11.) The *Isaiah W.* Court, moreover, emphasized this continuing duty to inquire into a child's Indian status "does not contain an exception for situations where no new information is submitted between one proceeding and the next." (*Id*. at p. 12.) Thus, even if Jonathan does not provide

_____

[7]    Section 224.3, subdivision (a), provides, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been . . . filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care."

additional information regarding his Indian ancestry, the applicability of ICWA must be revisited on remand.

To be sure, the juvenile court's analysis whether the evidence is sufficient to trigger ICWA's notice requirements for Andrew and Kailey will be enhanced if additional information concerning Jonathan's Indian ancestry is presented to the court. But the burden of developing that information is not properly placed on Jonathan alone. Section 224.3, subdivision (a), imposes on child protection agencies, as well as the juvenile court, the affirmative and continuing duty to inquire whether a dependent child is or may be an Indian child.  (See *In re Kadence P.*, *supra*, 241 Cal.App.4th at p. 1386; *In re H.B.* (2008) 161 Cal.App.4th 115, 121; see also Cal. Rules of Court, rule 5.481(a).)  As soon as practicable, the social worker is required to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility.  (§ 224.3, subd. (c); *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539; Cal. Rules of Court, rule 5.481(a)(4).)  From the record presented to us, it appears the Department and the juvenile court failed to satisfy that duty; neither the court nor the Department made any effort to develop additional information that might substantiate Jonathan's belief he may have Indian ancestry by contacting his siblings or other extended family members.  Both federal and state law require more than has been done to date.  On remand, an adequate investigation by the Department with a full report to the court must be promptly completed.

## DISPOSITION

The juvenile court's October 5, 2015 jurisdiction finding and disposition order as to Jonathan are reversed. On remand the court is to reconsider Jonathan's request for custody of Andrew and Kailey pursuant to section 361.2 in light of Jonathan's and the children's then-current circumstances, as well as its determination ICWA does not apply to this case.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.

14