Filed 10/5/16  In re Erik C. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re ERIK C., et al., Persons Coming Under Juvenile Court Law. | B269646 |
| | (Los Angeles County Super. Ct. No. DK06562) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MARTHA C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Nichelle Blackwell, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Martha C. (mother) appeals from the juvenile court's jurisdictional order under Welfare and Institutions Code section 300, subdivision (b).[1]  The juvenile court found that she placed her two younger children, Erik C. and S.C., at substantial risk of serious physical harm by allowing her adult son, Victor C., Jr. (Victor), to reside in the family home, despite his history of substance abuse and gang-related criminal activity.  Mother argues there is insufficient evidence to support the court's finding because, by the time of the adjudication/disposition hearing, she had excluded Victor from the home, so that her other children were no longer at risk.  Mother also contends the court should have ordered informal supervision rather than formal supervision in its dispositional order.  We do not agree; we affirm the judgment of the juvenile court.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2015, Los Angeles County sheriff's deputies conducted a probation compliance check on Victor at mother's residence.  Deputies searched Victor's bedroom and discovered a loaded .40-caliber semiautomatic pistol, gang paraphernalia, and methamphetamine pipes, one of which contained methamphetamine.  Sheriff's deputies took Victor into custody.  They also arrested mother for obstructing a peace officer during the search.  Deputies called the Los Angeles County Department of Children and Family Services (DCFS) to respond and provide protective services to mother's two other children, Erik C. (born 2001) and S.C. (born 2006).

A DCFS social worker responded to the family home and was informed by deputies that the loaded firearm and methamphetamine pipes were discovered within reach of the children in a dresser drawer in Victor's bedroom.  The children's maternal grandparents also were present in the home.  The grandmother explained she and her husband had moved in earlier in the year to help mother.  The grandmother reported she watches the children when mother is working, noting that mother is struggling financially and works overtime whenever possible.  When asked about Victor's drug use, the

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code, unless otherwise specified.

grandmother said "they all" believed he had stopped using drugs and distanced himself from his gang-affiliated friends; he now was working the night shift at a bakery warehouse.

The social worker transported the children to the DCFS office and interviewed them. S.C. stated she was in Victor's bedroom watching television the day before the probation search. She said Victor was in and out of the house and she did not really see him. Erik said Victor only recently had moved back into the home. They both denied seeing any guns, drugs, drug paraphernalia, or anyone under the influence of drugs in the home. Erik stated the family believed Victor was no longer using drugs because he was working. He also said that Victor's friends had not been allowed to visit the home since the grandparents moved in. The children were placed in the custody of their maternal aunt.

The social worker interviewed mother, who said she was unaware Victor had a loaded firearm and methamphetamine in his bedroom. When asked how long Victor had been living in the home, she responded: "He wasn't for a long time [*sic*]. He showed me that he was doing well. I gave him a chance because I saw [that] he was doing well." She reported that Victor had been testing negative for drugs, as required by his temporary employment agency. Mother said she allowed Victor back into the home because he said he wanted to change. She stated she no longer allowed Victor to have friends visit the home, and the grandmother made sure none of his friends came over while mother was at work. When asked about the children's father, Victor C., Sr. (father), mother reported that he had a lengthy history of domestic violence and substance abuse.

The social worker investigated Victor's criminal history and discovered he was a known gang member who previously had been arrested for being under the influence of a controlled substance in April 2014, possession of a stolen vehicle in March 2015, carrying a stolen loaded firearm in May 2015, and being under the influence of a controlled substance in June 2015.

The social worker also reported that DCFS previously had filed a juvenile dependency petition on behalf of Erik and S.C., stemming from a prior law enforcement

3

referral. In that matter, on June 6, 2014, sheriff's deputies responded to a report of gang activity at mother's home, and arrested a known gang member who was found fleeing with a gun. During the subsequent search, Victor and another adult male were found under the influence of methamphetamine and arrested. The house smelled of marijuana, and deputies discovered an ammunition magazine clip and gang paraphernalia. DCFS filed a section 300 petition, and mother agreed not to allow Victor in the home while the case was pending. That petition was dismissed by the juvenile court on October 20, 2014 due to insufficient evidence. On October 29, 2014, DCFS received another referral alleging Victor was smoking marijuana with other gang members in front of the home while the children were inside and mother was at work.

DCFS filed a juvenile dependency petition alleging under section 300, subdivision (b) that mother placed Erik and S.C. at risk of serious physical harm by allowing Victor to reside in the home knowing he has a history of substance abuse and criminal conduct.[2] At the detention hearing, the juvenile court found that DCFS had made a prima facie showing, on the basis of which the court ordered Erik and S.C. detained with their maternal aunt. The court also ordered DCFS to confirm that Victor had moved out of mother's home with all of his belongings, that the locks had been changed, and to obtain confirmation of Victor's new address.

---

[2]     Count b-1 stated: "The children, Erik [C.] and [S.C.]'s mother, Martha [C.], placed the children in a detrimental and endangering home environment in that on 10/28/15, a loaded .40 caliber glock firearm, gang paraphernalia, drug pipes and a drug pipe with methamphetamine were found on the property of the children's home and within access of the children. The mother allowed the adult sibling, Victor [C.,] Jr.[,] to reside in the children's home and have access to the children knowing that the adult sibling has a history of substance abuse and is a current user of illicit substances. The children's mother knew or reasonably should have known of the adult sibling[']s criminal conduct and failed to protect the children. Such a detrimental and endangering home environment established for the children by the mother and the mother's failure to protect the children endanger the children's physical health and safety, creates a detrimental home environment, and places the children at risk of serious physical harm, damage and danger." Count b-2 alleged that father's drug use also posed a risk of harm to the children.

DCFS conducted a home inspection on November 6, 2015. Mother reported Victor had not returned home since the night of his arrest on October 28. Mother provided the social worker with the address of a motel where Victor was staying, but indicated he was moving from place to place. Some of Victor's clothing and personal items remained in his room. Mother stated she was in the process of donating the clothes and cleaning out the room, and the family planned to remodel the room so the maternal grandparents could occupy it. Mother stated the locks would be changed later that evening. On November 8, a social worker confirmed Victor was staying at a motel. On November 10, a social worker returned to the family home and confirmed the locks had been changed. Victor's former room was vacant, the carpet had been stripped, and the walls were bare. Mother said Victor continued to live in a motel, and the children denied having had any contact with him.

At a progress hearing on December 2, 2015, DCFS reported mother had no knowledge of Victor's whereabouts, but appeared willing to cooperate with court orders. The court released Erik and S.C. to mother on the conditions that she not allow Victor in or around the home, and that she comply with unannounced visits by DCFS. In advance of the adjudication/disposition hearing, social workers made unannounced visits to the home and found no evidence that Victor was residing there. DFCS conducted further interviews with Erik and S.C., who both stated they had not seen Victor since the search and his arrest in October. Mother also was interviewed, and denied that she endangered her children. She stated that prior to DCFS intervention in October 2015, Victor had been living at the home only since September 2015, and was in the process of addressing prior criminal case obligations, working for a temporary agency, and participating in a community service program. Mother stated that when Victor was staying at the home, she checked his bedroom frequently but never found drugs, drug paraphernalia, or

weapons. She stated Victor recently had lost his job after being arrested and wanted to enroll in a residential substance abuse treatment program.[3]

The adjudication/disposition hearing was held on January 7, 2016. Minor's counsel asked the court to dismiss the allegations of the petition regarding mother, arguing there was insufficient evidence of a substantial risk to the children at the time of the hearing. Mother's counsel also argued for dismissal of the DCFS's petition. Father's counsel requested dismissal of the allegations against him.[4] The juvenile court sustained the section 300 petition, declared the children dependents, placed them with mother, directed DCFS to make unannounced home visits, and ordered family maintenance services. The court ordered mother to participate in parenting classes, individual counseling to address case issues, and not allow Victor access to the family home.

Mother filed this timely appeal.

## DISCUSSION

### I

We first consider whether this appeal is properly before us. As mother acknowledges, Erik and S.C. will remain under juvenile court jurisdiction regardless of the outcome of her appeal because father has not challenged the jurisdictional findings against him. "[A] jurisdictional finding good against one parent is good against both" because dependency jurisdiction attaches to the child, not the parents. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) The general rule is that a single jurisdictional finding supported by substantial evidence is sufficient to support the juvenile court's jurisdiction and render moot a challenge to any other finding. (*In re M.W.* (2015) 238 Cal.App.4th

---

[3]     On November 11, 2015, Victor was arrested for possession of drug paraphernalia. On December 11, 2015, he was convicted of this misdemeanor possession offense and placed on summary probation for 12 months. A subsequent check by DCFS indicated Victor had been incarcerated in county jail from December 23 to 26, 2015 for another unidentified offense.

[4]     Father is not a party to this appeal.

1444, 1452; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Respondent accordingly asks that we dismiss mother's appeal as moot in light of the unchallenged findings against father. We decline to do so.

This court retains discretion to consider the merits of a parent's appeal (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493), and frequently does so when the jurisdictional finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; see, e.g., *In re M.W.*, *supra*, 238 Cal.App.4th at p. 1452; *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316-1317; *In re D.P.* (2014) 225 Cal.App.4th 898, 902; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; *In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1064-1065; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1489.)

Mother asks us to consider her claims on the merits because (1) the jurisdictional finding serves as the basis for the dispositional orders she challenges, and (2) the finding "could also have negative affects [*sic*] in the future in a number of ways, including on mother's ability to maintain her parental relationship with these children." While not addressing mother's first contention, respondent argues that her claim of potential future negative effects is speculative and should be rejected. (See *In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1493-1495 [declining to exercise discretion to reach merits of appeal where appellant "has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings" and the court could not find any specific potential impact on its own].)

Despite mother's nonspecific assertion that the jurisdictional finding could affect her parental rights in the future, her appeal fits within two of the exceptions to the general justiciability rule identified in *In re Drake M*., *supra*, 211 Cal.App.4th at pages 762 to 763. First, the jurisdictional finding that mother endangered her children is the basis of the dispositional order she challenges. (*Id*. at p. 762.) Second, as in *In re Drake M*., this appeal determines whether mother is considered an "'offending'" versus a "'non-

offending'" parent under the Welfare and Institutions Code, "a distinction [that] may have far reaching implications with respect to future dependency proceedings in this case and [mother's] parental rights." (*Id.* at p. 763; see also *In re Christopher M.*, *supra*, 228 Cal.App.4th at pp. 1316-1317.) We accordingly exercise our discretion to consider mother's claims on the merits.

## II

Mother contends the juvenile court erred in sustaining the allegations against her because there was insufficient evidence that Erik and S.C. faced a substantial risk of serious physical harm at the time of the adjudication/disposition hearing. She argues that by the time of the hearing, the minors were no longer at risk because she had permanently expelled Victor from the family home. We disagree, finding substantial evidence supports the court's determination that the children remained at risk.

Jurisdiction under section 300, subdivision (b) is warranted, in relevant part, when the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." DCFS has the burden of proving three elements by a preponderance of the evidence in order to support a jurisdictional finding under section 300, subdivision (b): "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

The third element "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . . [Citations.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; see also *In re Christopher M.*, *supra*, 228 Cal.App.4th at p. 1318 ["the risk of serious physical harm . . . must exist at the time of the adjudication hearing"].) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue. [Citation.]" (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

We review the juvenile court's conclusion that DCFS met its burden of proof for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Under this standard, "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828.) We do not reweigh evidence, nor do we evaluate credibility. (*In re E.H.* (2003) 108 Cal.App.4th 659, 669.) "However, substantial evidence is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] . . . 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" (*In re Savannah M.*, *supra*, 131 Cal.App.4th at pp. 1393-1394, italics omitted.)

Mother does not challenge the sustained allegation that she allowed Victor to reside in the family home knowing of his substance abuse problems and association with gang members, nor does she deny that law enforcement found a loaded firearm and methamphetamine in a location accessible to the children. Rather, mother asserts that she made a good faith mistake in allowing Victor to return home: she and the rest of the family believed he was no longer using drugs and had distanced himself from his gang-affiliated friends. Following the probation search, mother insists she took "decisive action to separate Victor from the family home." By the time of the adjudication/disposition hearing, she maintains the children were no longer at risk because she had denied Victor access to the home, changed the locks, and even stripped and remodeled his room for the use of the maternal grandparents. Mother emphasizes that while the "court may criticize [her] for allowing Victor to move back into the home . . . the record does not contain evidence to show that he is likely to be allowed to move back in." (See *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1135 [reasoning that "[i]f the incident [of physical abuse by the mother] was not likely to recur, then the petition failed to allege facts to demonstrate present or future risk of physical harm"].)

9

Although mother has demonstrated significant progress in dealing with the protective issues in this case, we nonetheless conclude the juvenile court's jurisdictional finding was supported by substantial evidence. In light of the whole record, the court reasonably concluded that Erik and S.C. continued to face a substantial risk of serious physical harm at the time of the adjudication/disposition hearing because there was reason to believe mother may allow Victor to return home in the future.

The juvenile court determined that mother's endangerment of Erik and S.C. was not an isolated incident but rather a recurring issue. In announcing its judgment, the court referred to the prior section 300 petition filed by DCFS in 2014, expressing disappointment that "we're right back here again for the exact same thing that occurred previously where the petition is dismissed." Mother undisputedly was aware of the risk Victor posed to the children after sheriff's deputies raided her home on June 6, 2014 and found a known gang member fleeing with a gun, as well as Victor and another individual under the influence of methamphetamine. After DCFS filed a section 300 petition, mother agreed to exclude Victor from her home. However, within nine days of the petition being dismissed due to insufficient evidence, DCFS received another referral regarding drug use and gang activity at the home.

Given that mother previously allowed Victor to return home knowing that his drug use and gang activities endangered her children, the juvenile court reasonably inferred that she may repeat this mistake. This conclusion is supported by evidence that Victor did not have stable housing. At the detention hearing, the court ordered DCFS to confirm Victor's new address. But by the time of the adjudication/disposition hearing, the record indicates only that he had been staying in a motel, was moving from place to place, and had been incarcerated in county jail. Evidence showing Victor lacked stable housing supports a reasonable inference that he may seek to return to the family home.

Even though Victor had moved out of the family home by the time of the adjudication/disposition hearing, substantial evidence supports the court's determination that the children remained at risk. We therefore affirm the jurisdictional finding and order.

**III**

Mother also contends the juvenile court should have ordered informal supervision under section 360, subdivision (b). She argues that formal dependency was not required because she already had addressed the protective issues in this case by permanently excluding Victor from her home. Mother maintains that informal supervision would sufficiently serve the juvenile court's interest in ensuring Victor remains out of the home. We find no abuse of discretion by the juvenile court; the court acted within its sound discretion in fashioning an appropriate dispositional order.

Under section 360, subdivision (b), the juvenile court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of a social worker. (§§ 360, subd. (b), 301; Cal. Rules of Court, rule 5.695(a)(2).) "Whether to exercise this option . . . is a discretionary call for the juvenile court to make; it may opt to do so, but it need not." (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.) "The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) On appeal, this determination cannot be reversed absent a clear abuse of discretion. (*Ibid.*) A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

In its jurisdictional finding, the court reasonably inferred mother had allowed Victor to return home despite his drug abuse and gang involvement. This supports the court's determination that formal supervision was appropriate to ensure Victor remains excluded from the family home. Formal supervision allows DCFS to monitor the family and report on mother's progress while a voluntary case plan would not. (*In re N.M.*, *supra*, 197 Cal.App.4th at p. 171.) We therefore conclude the court exercised appropriate discretion in ordering formal supervision.

11

## DISPOSITION

We affirm the orders.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

12