Filed 4/5/21  In re Hanna F. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Hanna F. et al., Persons Coming Under the Juvenile Court Law. | B306708 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent.<br><br>v.<br><br>S.F.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP03887) |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel for Plaintiff and Respondent.

Saulo F. (father) appeals from the juvenile court's jurisdictional findings and removal order concerning his children Hanna F. (born September 2015) and Rachelle F. (born October 2016).  The children had previously been in the custody of H.B. (mother), thus father was a noncustodial parent at the time of the removal.[1]  In making its removal order, the juvenile court relied on Welfare and Institutions Code section 361, subdivisions (a)(1), (c), and (d), and section 362, subdivision (a).[2]  Father argues that substantial evidence does not support the juvenile court's finding that, as a noncustodial parent, father caused the children serious harm or put them at risk of suffering serious harm.  Father further argues that the juvenile court improperly assessed removal of Hanna and Rachelle from his custody under section 361, subdivision (d).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**The family's prior child welfare history**

Father filed a missing person report for Hanna in May 2016, reporting concerns for the child's safety with mother, who had mental health issues.  In July 2016, the Los Angeles County Department of Children and Family Services (DCFS) was advised that mother was arrested while on probation for assault with a deadly weapon.  At the time of mother's arrest one year old Hanna was released to father.

Mother gave birth to Rachelle while incarcerated.  Mother was transferred to Metropolitan State Hospital because she was found incompetent to stand trial.

---

[1]      Mother is not a party to this appeal.

[2]      All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

In November 2016, DCFS filed a petition on behalf of Hanna and Rachelle pursuant to section 300, subdivision (b), alleging that they were endangered by mother's mental health issues.

In April 2017, the juvenile court assumed jurisdiction over the children, and in May 2017, the children were released to father, who was found to be non-offending.[3]

In May 2018, DCFS received a referral alleging that father was neglecting the children and might be using drugs. Father was said to be acting "crazy." He would drink when he got his welfare checks and hide alcohol in the home. Father would be awake all night and sleep during the day when he was supposed to be caring for the children. In August 2017, father had tried to leave home with the children while he was drunk. The referral was substantiated, and the children were detained from father.

In June 2018, a petition was filed on behalf of the children alleging that they were endangered by mother's history of mental and emotional problems and failure to seek treatment, and because father used methamphetamine, amphetamine, and alcohol and had cared for the children while under the influence of alcohol.

The juvenile court sustained the petition against both parents and in August 2018, the court ordered that the parents receive family reunification services. Father was ordered to complete a full drug and alcohol program with aftercare, random and on-demand drug testing weekly, and a parenting program.

---

[3]     Father had been found to be the presumed father of both Hanna and Rachelle.

In February 2019, the juvenile court ordered that the children be placed in the home of mother and that mother receive family maintenance services.

In May 2019, father was dismissed from Clinica Romero Substance Abuse Program due to inconsistent attendance. Father also failed to appear for 10 of 11 drug tests between February and July 2019. Father had completed a parenting program, and was visiting twice weekly with the children. His visits appeared to be appropriate, although he displayed a lack of parenting skills.

On August 26, 2019, the juvenile court terminated jurisdiction with a custody order granting mother sole legal and physical custody of the children and granting father monitored visitation.

**Referral and detention in the present matter**

On November 2, 2019, DCFS received a referral alleging that mother left the children at a church providing food for the homeless. A DCFS social worker responded to the police station where the children were being held. The children did not know their last name, did not know their mother's name, and did not know their address. The children were social and appeared happy and healthy. An officer found a piece of paper with mother's identifying information in the children's stroller. He was unsuccessful in his efforts to locate mother at both residences associated with mother.

DCFS was unable to reach either parent at their last known telephone numbers.

On November 5, 2019, DCFS filed a section 300 petition on behalf of the children, alleging that on November 2, 2019, mother had left them alone at a church without making a plan for their

ongoing supervision.  The children were dirty with dried feces and urine on their bodies.  DCFS alleged that mother had a history of mental and emotional problems, which rendered her incapable of providing regular care and supervision for the children.

At the detention hearing the next day, only father was present.  The court detained the children from the parents and ordered monitored visits for father.  The court ordered DCFS to assess father's fiancé.

**Jurisdiction/disposition**

In a jurisdiction/disposition report dated January 14, 2020, DCFS reported that mother's whereabouts remained unknown.

A DCFS social worker interviewed father by telephone on January 2, 2020.  Father had been concerned about the children being in mother's care, as she made strange statements and appeared unstable.  Father had been having monitored visits with the children, but the visits stopped in October 2019 because mother would not respond to father's telephone calls.  On October 28, 2019, father filed a concealment report against mother because mother was in violation of a court order allowing him to see the children three times a week for three hours.

Father wanted custody of the children.  He was engaged and working full time.  A December 2019 letter showed father had enrolled in substance use disorder outpatient treatment at Clinica Romero in November 2019.  Father submitted two negative drug tests in December 2019.  A January 2020 letter reported that father was attending the program, meeting with his counselor, and testing weekly.  The letter stated that father was "exhibiting abstinence at this time and cognitively is in early recovery to bring awareness to his Substance Use Disorder."

Following their most recent detention, father was initially consistent with his visitation of the children.  However, after the first month father's visitation became inconsistent.

**First amended petition, filed February 21, 2020**

The first amended petition alleged an additional count under section 300, subdivision (b), that the children were at risk due to father's history of substance abuse; failure to comply with the juvenile court's previous dependency orders; and failure to reunify with the children.

**Additional reports**

In a last minute information for the court filed on February 21, 2020, DCFS reported that mother's whereabouts remained unknown.  The children's maternal grandfather expressed interest in caring for the children.

In a supplemental report filed June 22, 2020, DCFS reported that the children had been placed in the home of maternal grandfather.  Mother's whereabouts remained unknown.

Father was interviewed by telephone on June 5, 2020.  When asked when he last consumed methamphetamine or amphetamine, father responded, "No comment." When asked when he last consumed alcohol, father responded, "No comment." Father stated, "That's a past issue.  I'm not using drugs."  When asked to identify the reasons that the court granted the mother sole custody and ordered him monitored visits on August 26, 2019, father stated that the court was biased.

Father began participating in the outpatient substance abuse program offered at Clinico Romero in December 2019.  Father stopped participating in February 2020, as a precaution to avoid becoming infected with COVID-19.  Father stated that he

was not interested in participating in a substance abuse program at the time, as he had no need, and the court made no such order. Father stated that he would like the children released to him at the next hearing. He was open to the children being placed with maternal grandfather if he needed to reunify with them.

Father's fiancé, Y.G., was also interviewed. She had been living with father for approximately one year and has one child in common with father, L.F. Y.G. had no knowledge of father consuming drugs or alcohol. Y.G. was receptive to Hanna and Rachelle living in the home if the court were to order the children released to father.

In a letter from the director of Clinica Romero dated April 17, 2020, it was stated that father enrolled in a six-month program in November 2019, but was discharged on March 16, 2020, due to his noncompliance with the agency's rules.

Father's random drug and alcohol testing results from December 6, 2019 through May 26, 2019 showed four negative tests (December 6, 2019; December 12, 2019; February 6, 2019; and February 21, 2019) and eight missed tests. Three of the missed tests were excused as the testing site was closed due to the COVID-19 pandemic.

Father had trouble with visitation during the reporting period. In April 2020, the children's previous foster parent indicated that father wanted to change the visitation schedule. The foster parent was willing to modify the scheduled if father would follow it. The caregiver indicated that father was "short-tempered and easily angered" and expressed concern with father's attitude towards the caregivers. Father had been rude to the caregivers, including stating "fuck you" and ending phone calls abruptly. The children had overheard these calls, as they

were on speaker. The caregiver stated that father yells at the children when they refer to her as "mom," and regularly spoke poorly of DCFS. The caregiver felt nervous when father called and was considering asking that the children be placed in another home due to the father's actions.

After the children were placed with maternal grandfather, father was able to have monitored visits with the children at a local park. Maternal grandfather reported that the children had not disclosed any concerns regarding the visits with father, and showed no signs of distress after the visits. Either maternal grandfather or maternal uncle would monitor phone calls between the father and the children. Y.G. was monitoring the outdoor visits between father and the children, and found that the visits were going well. Father engaged in age-appropriate play with the children and provided snacks. The children appeared happy during the visits.

On June 8, 2020, a DCFS social worker visited father's home, a one-bedroom apartment that he shared with his fiancé and infant daughter, L.F. Father indicated that Hanna and Rachelle would share the bedroom with L.F. The utilities in the home were working, and the home was organized and well-kept.

**Adjudication/disposition**

On June 22, 2020, the juvenile court held a combined adjudication and disposition hearing. Father was present.

In argument, counsel for the children joined with DCFS in requesting that the petition be sustained in its entirety, noting that father had been discharged from a drug treatment program in May 2019 for failure to attend the program and multiple missed drug tests. Father continued to miss drug tests and

suggested his drug problem was in the past, showing that he had not acknowledged the problem.

Counsel for father asked that the count against father be dismissed, arguing that father represented that the drug program had closed due to the pandemic. Counsel conceded that father had failed to enroll in the telephonic services offered by the program. Counsel pointed out that there had been no suspicion of father being under the influence during the present case.

The juvenile court sustained the petition in its entirety, noting that father's previous case ended with father having only monitored visitation, and that he failed to complete a drug program or submit to drug tests. The court found sufficient evidence that father had failed to address the issues that previously brought the family before the juvenile court and led to father losing custody of his young children.

The court declared the children dependents, ordered that they be suitably placed, and ordered that the parents receive family reunification services. Father was ordered to participate in a drug and alcohol program with individual counseling, and to randomly test weekly for drugs and alcohol. The court made removal findings by clear and convincing evidence pursuant to sections 361, subdivisions (a)(1), (c), and (d), and section 362, subdivision (a).[4] The court ordered that the parents' visits be monitored and ordered DCFS to address liberalizing father's visits after he completed four consecutive clean drug tests.

---

[4] Section 362, subdivision (a) allows the juvenile court to "make any and all reasonable orders for the care, supervision, [and] custody" of a child who has been adjudged a dependent child of the court.

9

**Notice of appeal**

On July 16, 2020, father filed a notice of appeal from the juvenile court's jurisdictional and dispositional findings and orders.

## DISCUSSION

### I. Justiciability of father's claims

"As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) Thus, "in normal circumstances a finding against one parent is a finding against both in terms of the child being adjudged a dependent." (*In re Janet T.* (2001) 93 Cal.App.4th 377, 392.) Because father does not challenge the jurisdictional finding concerning mother's behavior, we first address the issue of whether father's claim is justiciable.

This court retains jurisdiction to consider the merits of a parent's appeal from a jurisdictional/dispositional finding if that finding "'(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].'" (*In re M.W., supra,* 238 Cal.App.4th at p. 1452.)

In this case, father challenges the dispositional order removing the children from his custody. Further, the jurisdictional findings against him create the possibility of prejudice in future family law or dependency proceedings. For these reasons, we find father's jurisdictional appeal to be justiciable.

10

## II. Applicable law and standard of review

A finding that a child is described by section 300, subdivision (b)(1) must be supported by evidence that the child has suffered, or is at substantial risk of suffering, serious physical harm or illness as a result of the parent's inability to protect and supervise the child.  (§ 300, subd. (b)(1).)  The juvenile court must make its finding that a child is described by section 300 by a preponderance of the evidence.  (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.)  When a juvenile court finds that a child is a person described by section 300, it may order and adjudge the child to be a dependent child of the court.  (§ 360, subd. (a).)

In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2.)  The focus of section 300 is on averting harm to the child.  (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)  A current risk of harm can be shown by evidence of past conduct, if there is a reason to believe the conduct will recur.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.)

The Legislature has declared that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)  An unresolved drug problem can compromise a parent's ability to care for his child, and justifies the assumption of jurisdiction.  (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)

A juvenile court's jurisdictional findings are reviewed for substantial evidence.  (*In re Mariah T.* (2008) 159 Cal.App.4th

11

428, 438.)  Under this standard of review, the entire record is reviewed in a light most favorable to the findings and conclusions of the juvenile court and deference is given to the lower court.  (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1427.)  The appellate court does "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts."  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  If supported by substantial evidence, the finding must be upheld, even if substantial evidence may exist to support a contrary finding.  (*Ibid.*)

**III.  The evidence supported the juvenile court's finding that the children were described by section 300, subdivision (b)(1) due to father's conduct**

Father acknowledges that a parent's substance abuse may put a child at risk of suffering serious harm under section 300, subdivision (b)(1).  Father further acknowledges that he had not fully complied with the dispositional treatment orders that were made in the prior juvenile court case.  However, father argues that because he was a noncustodial parent with monitored visits, he did not place his daughters at a substantial risk of serious harm due to his prior history of substance abuse.

Father's argument relies on the court-imposed restrictions to his parenting to protect the children.  This argument only further advances the court's jurisdictional finding.  Father is not denying drug problems in the past, which he had not yet resolved to the satisfaction of the juvenile court.  Father's unresolved drug problem placed the children at risk of harm.  This is particularly true due to their young age.  Hanna and Rachelle were four and three years old at the time of the proceedings in this case.  As such, they were "children of such tender years that the absence of adequate supervision and care pose[d] an inherent risk to their

12

physical health and safety. [Citations]." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824; *see also In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [children "six years old or younger at the time of the jurisdiction hearing" are "children of 'tender years.'"].)

Father further argues that the jurisdictional finding as to father was based on prior substance abuse, not current substance abuse. Father argues that a finding under section 300, subdivision (b), requires proof of a current risk to the child. (Citing *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004.) Father argues that a history of substance abuse alone is insufficient to support dependency jurisdiction under section 300, subdivision (b)(1). Instead, a jurisdictional finding requires evidence that the children are currently at substantial risk of suffering "serious physical harm or illness, as a result of the failure or inability of [the children's] parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1).) Father argues that the evidence does not support a finding that father is a current substance abuser. Father points to evidence that he enrolled in a drug treatment program, and purportedly stopped only to limit his exposure to COVID-19. Father points out that he tested negative for drugs twice in December 2019 and twice in February 2020, and that three of his missed tests were excused due to the testing site closure. Further, father points to the evidence of his fiancé, with whom father lived, who stated that she had no knowledge of father consuming any drugs or alcohol.

Contrary evidence in the record supported the juvenile court's finding of jurisdiction. While section 300, subdivision (b)(1) requires proof of current risk to the child, a current risk of harm can be shown by evidence of past conduct if there is reason

13

to believe such conduct will recur.  (*In re Savannah M., supra,* 131 Cal.App.4th at p. 1394; *In re Rocco M., supra,* 1 Cal.App.4th at p. 824.)  A court need not wait until a child is seriously harmed to assume jurisdiction over the child.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  In this case, there was ample evidence that father's unresolved drug issues placed his children at present risk.  Despite enrolling in the same drug treatment program twice, father never completed the program.  The first time, he was discharged due to inconsistent attendance.  When he re-enrolled during the present case, he claimed that he had stopped attending as a precautionary measure to avoid exposure to COVID-19.  However, he later declared his unwillingness to participate in the program because he did not feel the need and it was not court-ordered.  The court later received evidence that the program had continued services telephonically during the pandemic but father failed to participate.  This led to father being discharged from the program a second time.

Father's failure to complete drug treatment put the children at risk of harm as it was an indication that father had not resolved his drug use issues.  In addition, there was ample evidence for the court to infer that father's drug use continued.  While father described his drug use as a "past issue," he declined to comment on the last time he used drugs or alcohol.  Father's failure to identify a date of sobriety supports a reasonable inference that he continued to abuse substances.  Further, father missed multiple drug tests.  When there is evidence that a parent has missed drug tests, it is reasonable to infer that the parent is declining to attend because the result will be positive.  (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 ["a missed drug test, without adequate justification, is 'properly considered the

14

equivalent of a positive test result.'"].) Father had an extensive history of missed tests, and in the present matter, had missed his last three tests between March and May 2020.

Substantial evidence supports the juvenile court's finding that father's unresolved drug abuse issues placed the children at substantial risk of harm. Although father was a noncustodial parent at the time of these proceedings, the evidence supports the juvenile court's decision that jurisdiction was warranted to continue to protect the children from risk of harm from father's drug use.

## IV. The juvenile court properly assessed the children's removal from father

Section 361, subdivision (c) addresses removal of a dependent child "from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated . . . ."

Section 361, subdivision (d) applies to parents with whom the child did not reside at the time the dependency petition was filed. The statute prohibits removal from such a parent in the absence of clear and convincing evidence of a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child, and no reasonable means to protect the child without removal.

Father contends the juvenile court erred in removing the children from father's care pursuant to section 361, subdivisions (c) and (d). Father appears to argue that these subdivisions do not apply because father was a noncustodial parent. However, the juvenile court relied on multiple sections, noting that its decision applied to both a noncustodial parent and a custodial parent. The court explicitly cited section 361, subdivision (a), as

15

well as section 361, subdivision (d), which applies to parents with whom the child does not reside.

Father argues that the juvenile court should have made an assessment pursuant to section 361.2, which requires that after removing the child from a custodial parent, the child be placed with a noncustodial parent unless the court finds that the placement with that parent would be detrimental to the safety, protection or physical or emotional well-being of the child. (Citing *In re Andrew S.* (2016) 2 Cal.App.5th 536, 545.) While section 361, subdivision (d) addresses the removal of a child from a parent with whom the child did not reside, but who still had custody, father argues, section 361.2 is the proper statute when removing a child from a noncustodial parent.

The juvenile court made the finding that is required under section 361.2, stating that "it would be detrimental to return the children to [father's] care." Ample evidence in the record supported this finding, thus father suffered no prejudice from the juvenile court's failure to expressly cite section 361.2. (*See In re J.S.* (2011) 196 Cal.App.4th 1069, 1078-1079.) Further, the court expressly cited section 361, subdivision (d), which requires the same detriment finding and explicitly applies to parents who like father, did not reside with his children.[5] No error occurred.[6]

---

[5] Father argues that he suffered prejudice from the court's failure to cite section 361.2 because section 361.2 requires that the detriment finding be made by clear and convincing evidence. (Citing *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 301.) However, section 361, subdivision (d) also requires the court to make a removal decision by clear and convincing evidence. (§ 361, subd. (d).) We must presume that the juvenile court performed its duty in applying the clear and convincing standard of proof, even if the juvenile court did not expressly state the

**DISPOSITION**

The jurisdictional findings and orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

CHAVEZ


We concur:


_____, P. J.

LUI


_____, J.

HOFFSTADT

---

standard of proof it applied in making its findings. (Evid. Code, § 664 [presumption that official duty has been performed.].)

[6]     Father makes a purely legal argument that the juvenile court failed to rely on section 361.2. Father does not contend that there was insufficient evidence to support the juvenile court's removal order, therefore we do not discuss this issue.