Filed 6/22/21  In re K.D. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.D. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br>v.<br>Z.A.,<br><br>        Defendant and Appellant. | A161514<br><br>(Alameda County Super. Ct. Nos. JD03251601, JD03251701) |

Z.A. (Mother) appeals from a jurisdiction order declaring her daughters, K.D. and O.D. (Minors), dependents pursuant to Welfare and Institutions Code section 300, subdivision (b)(1), and from a disposition order removing Minors from her custody.[1]  Mother contends (1) the juvenile court's jurisdiction and disposition findings are unsupported by substantial evidence; (2) the court failed to state the factual basis for removal as required by section 361, subdivision (e); and (3) the court abused its discretion in ordering

_____

[1]        All further statutory references are to the Welfare and Institutions Code.

1

removal of Minors. We agree in part with Mother's first contention and reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Petition and Detention**

In June 2020, the Alameda County Social Services Agency (Agency) filed a dependency petition concerning K.D. and O.D., who were 14 and 11 years old, respectively. The petition contained a single allegation under section 300, subdivision (b)(1) ("300(b)(1)"), that Minors suffered, or were at substantial risk of suffering, serious harm or illness as a result of Mother's failure or inability to adequately supervise or protect them, and/or Mother's inability to provide them regular care due to mental illness, developmental disability, or substance abuse. The Agency alleged as supporting facts that Mother "has mental health concerns that impair her ability to provide safe, stable, and adequate care, support, or supervision to [Minors]," then enumerated specific factual allegations.

The first set of factual allegations, numbered "B-1a," stated that in July 2018, Mother threw O.D. across a room causing her to hit her head, O.D. refuses to return to Mother's home because of how Mother treats her, and Mother threatens to hit Minors. The second set, numbered "B-1b," alleged that during the initial investigation, Minors were visibly upset (crying, fidgeting, rocking in their chairs) when discussing Mother, Mother yells at them a lot, they are afraid of Mother, and they have not been to her home since April 10, 2020. The third set, numbered "B-1c," asserted that Mother falsely accuses Minors' father, David D. (Father), of sexually abusing Minors'

2

younger siblings,[2] she accuses Minors of assisting him, and she makes various allegations against Minors and Father when she is upset.

The Agency's detention report documented Emergency Response Child Welfare Worker (CWW) Myesha Walker-Lillard's investigation of Mother, including Mother's allegations that Father sexually abused her youngest children with Minors' assistance. CWW Walker-Lillard reported that Mother forwarded the Agency a recording showing her younger children disclosing abuse and a video of a file on Father's old computer related to child pornography. Mother acknowledged she had no physical proof to support the sexual abuse allegations, but said "I just know, I have a feeling that something has happened as [the younger children's] behaviors have changed." Mother also claimed one of her younger children told her that K.D. pushed a quarter into her "pee pee" during bath time. Mother asserted she took her younger children to the hospital and showed CWW Walker-Lillard the hospital paperwork. The hospital paperwork said nothing of sexual abuse or suspected sexual abuse, and only stated the children were treated for diaper rash.

Father told CWW Walker-Lillard that Mother had made these types of allegations against him for years, the allegations were all proven untrue, and he believes Mother is mentally unstable. Minors denied engaging in inappropriate sexual conduct.

Specifically, K.D. denied putting quarters in her younger sibling's "pee pee," putting a towel in her younger siblings' mouths, or helping Father do inappropriate things to her younger siblings. K.D. said Mother is mad at her and makes "all sorts of allegations" when she is upset. K.D. discussed a prior

---

[2]     Aside from Minors, Mother has twins who were approximately four years old at the time the petition was filed.

incident when her younger brother "put his legs up in the air" and yelled "look [K.D.]," to which Mother responded by telling K.D. that she needed to have "an adult conversation with her" and then asked if "she did anything" to her younger sibling. K.D. said "no" then cried in her room all day afterwards. During this incident, Mother went into K.D.'s room and said "she would make it hell for [K.D.] and that [K.D.] was ruining her kids . . . ."

O.D. also denied putting a towel in her younger siblings' mouths, denied holding her siblings down so Father could do inappropriate things to them, and denied that K.D. put quarters into her younger sibling's "pee pee." O.D. stated she does not feel safe at Mother's home where there is "a lot of yelling" leading to "huge fights," and while Mother does not hit her, she threatens to hit her and does hit the younger children. O.D. reported in July 2018, Mother threw her across a bed causing her to hit her head, and ever since, she has not trusted Mother. Mother also accused her of stealing and called her a "bad liar." O.D. said she did not want to go back to Mother's home because of the way Mother treats her.

CWW Walker-Lillard spoke with the Oakland Police Department, which reported Mother's youngest children made no disclosures when interviewed. CWW Walker-Lillard concluded Mother's sexual abuse allegations against Father were unfounded. CWW Walker-Lillard stated "[t]he emotional harm related to the mother's allegations is detrimental to [O.D.'s] and [K.D.'s] well-being."

In addition to the foregoing, the detention report recounted that CWW Emily Carmona spoke with Mother's therapist, who had been working with Mother and her younger children since late April 2020. This therapist said Mother's youngest children were "presenting with behavioral difficulties (night terrors, physical aggression with each other and the mother, tantrums,

4

bed-wetting, defiance, sexualized behaviors, and anxiety)." The sexualized behaviors of the younger children included their "hiding from their mother and fondling each other." Mother's therapist said she did "not doubt that the sexual abuse disclosure will present itself in her work with the family" and she did not believe "[M]other's mental health was impairing her judgment related to the concerns around sexual abuse."

The detention report also set out the family's prior child welfare history. The Agency indicated it received a referral for physical abuse in February 2018 when O.D. reported Mother pushed her, causing her to fall and hit her head. The Agency closed the referral as unfounded, though O.D. had a bump on the back of her head. At that time, Minors also reported Mother threatens to hit them if they do not do what she asks. Moreover, in 2012, the Agency investigated and concluded an allegation that Father was sexually abusing Minors was unfounded; Minors did not disclose anything when interviewed, hospital staff found no evidence of abuse, and the Oakland Police Department did not find the allegations to be true.

At the detention hearing on June 30, 2020, Mother submitted to temporary findings and the Agency's recommendations for placement with Father. Adopting the recommendations in the detention report, the juvenile court detained Minors and found their initial removal was necessary because there was a "substantial danger to the physical health of the children, or the children are suffering severe emotional damage, and there are no reasonable means to protect the children's physical or emotional health without removing them from the mother's physical custody."

### B. Jurisdiction and Disposition

In July 2020, the Agency filed a report prior to the jurisdiction and disposition hearing. In it, CWW Carmona indicated she asked Mother about

5

prior allegations that Father sexually abused K.D. Mother said that while she was changing K.D.'s diaper after a visit with Father, K.D. put her legs around Mother's neck and was laughing. This surprised Mother and prompted her to take K.D. to a hospital. "CPS" was called but the case was determined to be unfounded. Neither the hospital nor "CALICO" found anything. Mother asserted the Oakland Police Department conducted a sexual abuse investigation at some unspecified time, ran software on Father's computer and found one search for " 'child porn,' " but closed the investigation thereafter without further intervention.

CWW Carmona asked Mother about the present allegations involving Father and Mother's youngest children. Mother apparently continued to claim that Father sexually abused her younger children with Minors' help. Despite the younger children not disclosing any abuse when interviewed, Mother believed a second interview would help them disclose it. Mother said she did not believe Father was currently sexually abusing Minors because he is "interested in younger children," but she believed Father had "groomed and coached" Minors.

CWW Carmona spoke with Minors, who said they felt safe with and wanted to remain with Father and did not wish to visit Mother. O.D. reported she likes Father's house because there is " 'not that much yelling and . . . not that many fights,' " and the yelling at Mother's house " 'hurts her ears a lot.' " O.D. denied anyone touching her inappropriately. K.D. stated Father's house is quiet, and though she always felt safe with Mother, she did not like what Mother said and did not understand why she said those things. K.D. disclosed no concerns regarding sexual abuse.

The report ultimately stated the Agency believed Mother "may have underlying and untreated mental health issues that are causing her to think

6

or believe things that may not be true" or that she may be experiencing stress from raising two "very active 4 year olds." The Agency expressed concern about the "emotional impact" Mother's allegations might have on Minors, and the impact of repeated Agency involvement on Minors. The Agency recommended, among other things, that the juvenile court make findings that the allegations of the petition are true, that Minors are persons described by section 300(b)(1), and that clear and convincing evidence required removal of Minors from Mother's physical custody to protect them.

At a hearing on July 24, 2020, Mother asked for a contested hearing, which the juvenile court set for October 1, 2020. After indicating there was an order for supervised visits but Minors refused to attend, Mother requested therapeutic visits with Minors. The court granted Mother's request for therapeutic visitation, though it indicated no one could physically force Minors to attend.

Prior to the October 1 hearing, the Agency filed an addendum report indicating that Minors still did not want to visit Mother and were waiting for an apology. The addendum also reported the following. Mother had started therapy and so did K.D., but K.D. did not want to continue. O.D.'s therapist told CWW Carmona that O.D. does not feel good about herself and feels like she is walking on eggshells around Mother, and O.D. "does not explore her relationship with her mother in therapy because it is 'super painful.' " Father reported an incident in mid-September 2020, during which Mother saw and called to K.D. as K.D. was walking to a friend's house, but K.D. got scared and ran. Mother then drove in front of K.D. and cut off her path, but K.D. ran around the car and continued to her friend's house where she called Father. K.D. confirmed this incident and said she was " 'hyperventilating' " and "breathing super fast" when she saw Mother. The Agency's

7

recommendations remained the same as in the original jurisdiction and disposition report.

On October 1, 2020, the juvenile court held a contested jurisdiction and disposition hearing. The court admitted the Agency's reports into evidence, and the Agency asked the court to adopt its recommendations and proposed custody orders. Minors and Father agreed with the recommendations. Mother objected to the court "making a finding based on the allegations in the petition," but declined to present evidence and said she would "let the [c]ourt enter a finding based on the reports." Mother stated she agreed with the proposed custody orders and was aware Minors did not want to visit, and said she would be in touch with Father regarding changes in Minors' willingness to visit.

After the parties submitted, the juvenile court discussed visitation, stating it had "significant concerns," specifically about the allegations that Mother falsely accused Father of sexually abusing Minors' younger siblings with Minors' help. The court indicated it would not alter the visitation orders at that time, as it did not want to pressure Minors into visiting Mother.

The juvenile court then adopted the Agency's recommendations. Specifically, the court found that the allegations in the petition were true and that Minors were persons described by section 300(b)(1). The court also found clear and convincing evidence that Minors must be removed from Mother's physical custody because returning custody to Mother would cause substantial danger to Minors' physical health, protection, or physical and emotional well-being, and there was no reasonable alternative means to protect the children. The court granted Father custody of Minors and signed written custody orders giving Mother supervised visitation with Minors on

the first and third weekends of the month.  The court then dismissed the dependency matter.  Mother filed a notice of appeal.

## DISCUSSION

Mother contends substantial evidence does not support the juvenile court's jurisdiction findings and its order sustaining jurisdiction pursuant to section 300(b)(1).  On this record, we agree.

Section 300(b)(1) permits a juvenile court to take dependency jurisdiction over a child if "[t]he child has suffered, or there is a *substantial* risk that the child will suffer, *serious physical* harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."  (Italics added.)  "A jurisdictional finding under section 300, subdivision (b)(1), requires [the child services agency] to demonstrate the following three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness."  (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

"As appellate courts have repeatedly stressed, ' "[s]ubdivision (b) means what it says.  Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness." ' [Citations.] . . . *Section 300, subdivision (b) does not provide for jurisdiction based on* ' "emotional harm." ' " (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111–112, italics in original and added.)

We review a juvenile court's jurisdiction findings for substantial evidence.  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

9

In this case, even if we assume the factual allegations in the petition are all supported by substantial evidence, there is no substantial evidence supporting the third statutory element enumerated above, i.e., that Minors have suffered *serious physical* harm or illness, or that there exists a *substantial risk* of such harm or illness. (§ 300(b)(1).)

As Mother points out, the allegation that Mother threw O.D. in 2018 involved an incident that occurred more than two years before the contested jurisdiction and disposition hearing. There is nothing in the record, however, substantiating the existence of a substantial risk that such an incident would recur. "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.] Thus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' " (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824; see, e.g., *In re Jesus M.*, *supra*, 235 Cal.App.4th at pp. 112–113 [domestic violence incidents occurring more than three years earlier were not substantial evidence supporting a section 300(b) finding where there was no evidence of current violent behavior].) Thus, while the evidence reasonably establishes that Mother's home is tumultuous—e.g., O.D. reported "a lot of yelling" at Mother's home leading to "huge fights," and K.D. reported there is no discipline in Mother's home— there is no evidence that Mother has ever inflicted any serious physical injury on any of her children.[3] Indeed, O.D. reported that Mother does not

---

[3] Although O.D. sustained a "bump" on the back of her head after the 2018 throwing incident, no further detail is provided about that injury. It is thus unclear whether this bump constituted a serious injury.

hit her, and K.D. reported she does not think Mother would do anything to intentionally hurt them and she always felt safe with Mother.

Although O.D. reported that Mother hits her younger children with her hand, no further detail is provided about the nature of this hitting, such as the amount of force Mother uses or when it has occurred. As such, even if it were reasonable to infer that Mother's use of force against her younger children poses a substantial risk that she will use force against Minors, the absence of any meaningful details regarding the force being used counsels against relying on the inference as establishing a current *substantial risk of serious physical harm or illness* to Minors. (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.)

Likewise, the allegation that Mother threatens to hit Minors falls short of evidencing a current substantial risk that Minors will suffer serious physical harm or illness.[4] As stated, there is no evidence Mother has ever inflicted any serious injury on any of her children. Although threatening to hit a child could constitute emotional abuse, the Agency alleged dependency jurisdiction only under section 300(b)(1), which does not authorize jurisdiction because of emotional harm. (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 112.)

We acknowledge the troubling nature of the remaining allegations— i.e., that O.D. refused to return to Mother's home, that Minors were visibly upset (crying, fidgeting) while discussing Mother, that Mother yells at Minors

---

[4]     We acknowledge there is substantial evidence that Mother threatens to hit O.D. Specifically, the detention report reflects that O.D. told CWW Walker-Lillard that Mother threatens to hit her. That said, there is no substantial evidence that Mother presently threatens to hit K.D. Unlike O.D., the detention report does not show K.D. reporting such a threat by Mother to CWW Walker-Lillard. Instead, K.D. stated she did not think Mother "would do anything to intentionally hurt them."

a lot and they are afraid of her, and that Mother falsely accuses Father and Minors of things such as sexually abusing her youngest children—and the resulting cause for concern particularly as to Minors' emotional well-being. Nonetheless, such allegations do not support a finding that Minors suffer from or at substantial risk of serious physical harm or illness.

This ultimate conclusion is supported by the Agency's detention report and jurisdiction and disposition report. Under the heading "Future Risk," the reports state only that Minors "may have long-term mental health issues (anxiety, depression, PTSD, and self-esteem issues) if their mother continues to yell at them, make false accusations against them, and threaten them." Unfortunately, this case is like many others, where the courts have been "repeatedly called on to review jurisdictional findings where . . . one parent has behaved badly, undeniably causing family trauma, but presents no obvious threat to the children's physical safety." (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 112.)

In an apparent effort to circumvent the deficiency of the jurisdiction finding, the Agency contends the juvenile court could have found the "B-1b" and "B-1c" allegations true under section 300, subdivision (c) ("300(c)"). While that may be true, the contention provides no basis for affirming the judgment.

A court may assert dependency jurisdiction under section 300(c) when "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care."

Whether or not section 300(c) could have provided a basis for dependency jurisdiction, Mother's due process rights may not be ignored. "[A] parent whose child may be found subject to the dependency jurisdiction of the court enjoys a due process right to be informed of the nature of the hearing, as well as the allegations upon which the deprivation of custody is predicated, in order that he or she may make an informed decision whether to appear and contest the allegations." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 751.)

Here, the Agency's only alleged ground for dependency jurisdiction was that Minors were children described by section 300(b)(1), and the Agency acknowledges that the dependency petition included no allegation under section 300(c). Minors and Father agreed to the Agency's recommendations that the juvenile court take jurisdiction under section 300(b)(1), but Mother objected to the court finding jurisdiction based on the Agency's reports. Notably, the court never indicated it was relying on section 300(c) in making its jurisdiction order, and nothing in the record indicates Mother had notice or opportunity to defend against a section 300(c) allegation. (See *In re Andrew S.* (2016) 2 Cal.App.5th 536, 543–544.)

We now assess whether a reversal is warranted. Reversal is appropriate only where error is prejudicial i.e., where " ' " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' " (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303.) Here, there was evidence the children were emotionally affected by Mother's conduct. But a jurisdiction finding under section 300(c) requires proof by a preponderance of the evidence that the children are suffering or are at substantial risk for suffering *"serious* emotional damage, *evidenced by severe anxiety, depression, withdrawal, or*

13

*untoward aggressive behavior toward self or others.*" (§ 300, subd. (c), italics added.) Significantly, at the contested hearing, no witnesses testified, and none of the reports in evidence contained any statements or psychological evaluations from medical professionals indicating that Minors were suffering from "serious emotional damage" or were at risk of such. (See *Nahid H. v. Superior Court* (1997) 53 Cal.App.4th 1051, 1070.) To the contrary, the addendum report filed just before the contested hearing indicated that "everything was going well" for Minors, and that neither had any worries at that time. Moreover, had Mother been on notice of a section 300(c) allegation, she might very well have presented expert and other evidence credibly countering any allegation of serious emotional damage. On this record, we cannot conclude the error was harmless.

In sum, the jurisdiction findings must be reversed. Such reversal, in turn, necessitates reversal of the disposition orders. (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 114.) Having so concluded, we need not and do not address Mother's other arguments concerning the juvenile court's jurisdiction findings and the order removing Minors from Mother's custody.

We end by noting that "[o]ur conclusion that the sustained allegations of the petition do not support jurisdiction does not mean the [Agency] cannot try again. Indeed, it is entirely possible valid grounds exist for the state to assume jurisdiction over these children and indeed it may be in the children's best interests for this to happen." (*In re Janet T.* (2001) 93 Cal.App.4th 377, 392.)

### DISPOSITION

The orders of the juvenile court are reversed, and the matter is remanded for further proceedings consistent with this opinion.

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Jackson, J.


_____
Wiseman, J.*


A161514


---

*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.