Filed 1/28/21  In re Jonathan H. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JONATHAN H., a Person Coming Under the Juvenile Court Law. | B305893<br><br>(Los Angeles County Super. Ct. No. 18CCJP07281B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>WILLIAM H.,<br><br>　　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore.  Reversed.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

The juvenile court exerted dependency jurisdiction over a 10-year-old boy and removed him from his father because the father would leave the boy with his paternal grandparents "for significant periods [of time] without informing [them] of [father's] whereabouts." The court grounded its jurisdiction solely on the statutory provision that requires proof, among other things, that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness." (Welf. & Inst. Code, § 300, subd. (b)(1).)[1] Because there is no evidence—let alone substantial evidence—that leaving the boy in the care of his paternal grandparents placed him at substantial risk of serious physical harm, we are compelled to reverse the trial court's exertion of jurisdiction and its consequent removal of the boy from his father's custody.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Jonathan H. was born in July 2010. Rhonda K. (mother) is his mother, and William H. (father) is his father. Mother and father married in 2010 and separated in 2015, but are not legally separated. Jonathan has an older half sister by another father.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

By 2018, mother and father were not living together, and Jonathan was living with mother.

## II.    Procedural Background

### A.    *Initial exertion of dependency jurisdiction over Jonathan*

In November 2018, the Los Angeles County Department of Children and Family Services (the Department) filed a petition seeking to exert dependency jurisdiction over Jonathan and his half sister due to domestic violence between mother and her then-current boyfriend.  At the first hearing on the case, the juvenile court detained Jonathan and his half sister from mother and placed them with father, who was at the time living with the paternal grandparents.  In March 2019, the juvenile court sustained the jurisdictional allegation regarding mother's domestic violence, declared both children to be dependents, removed them from mother's custody, and placed them with father.[2]

### B.    *Father's care of the children*

Although the Department reported in December 2018 that the kids were "safe" in the paternal grandparents' home, the Department became concerned by father's inattentiveness to the needs of Jonathan and his half sister.  In particular, father was (1) not getting Jonathan (and, for that matter, his half sister) to school on time, if at all, (2) not regularly bringing Jonathan (and, for that matter, his half sister) to their mental health therapy sessions, and (3) not "maintain[ing] adequate contact" with the

---

[2]    The Department filed a supplemental petition alleging that dependency jurisdiction was also proper due to mother's drug addiction, but the juvenile court did not sustain jurisdiction on that basis.

3

Department's social workers. In July 2019, father admitted he felt "overwhelmed."

All this time, father and the children were living with the paternal grandparents. On New Year's Day 2020, the Department received a report that father would leave the kids in the paternal grandparents' care for "[two to three] days without informing [them] of his plans" and without being available by phone. The paternal grandparents also suspected father was again using drugs because he was staying out "all hours of the night" and otherwise acting "erratic[ally]." Father refused and avoided the Department's efforts for him to submit to drug tests as well.

### C. *Further assertion of jurisdiction in section 342 petition*

On February 5, 2020, the Department filed a supplemental petition under section 342 asking the juvenile court to exert dependency jurisdiction over Jonathan on the ground that father, "[o]n prior occasions in 2020," had left Jonathan "in the home of the . . . paternal grandparents . . . and failed to make an appropriate plan for [his] care and supervision," and that "father [had] failed to return to resume care and supervision of the child for up to [three] days and failed to inform the paternal grandparents of his whereabouts."[3] Because the Department grounded this allegation in subdivision (b)(1) of section 300, the Department further alleged that father's "failure to make an

---

[3] The Department also alleged that jurisdiction was appropriate because father would leave Jonathan "for extended periods of time" in father's car outside of a home that father was fixing up. The juvenile court found insufficient evidence to sustain this allegation.

4

appropriate plan for the ongoing care and supervision of [Jonathan] endangers the child's physical health and safety and places the child at risk of serious physical harm and damage."

The juvenile court thereafter detained Jonathan from father, and placed Jonathan with the paternal grandparents. Because Jonathan was already living with the paternal grandparents, the detention had no effect on Jonathan's actual, physical placement beyond requiring father to move out.

On March 10, 2020, the juvenile court convened a jurisdictional and dispositional hearing. The court denied father's requests for a continuance, and heard testimony from father and from paternal grandfather. In light of that testimony, the court modified the allegation to provide that father had left the paternal grandparents' "home for significant periods [of time]" (rather than "[two to three] days") "without informing the paternal grandparents of his whereabouts," and then sustained that allegation. The court then removed Jonathan from father's custody and ordered him placed with the paternal grandparents. As before, this had no effect on Jonathan's actual, physical placement because he had been living with paternal grandparents all along. The court ordered father to receive reunification services.

D.  *Appeal*

Father filed this timely appeal.

## DISCUSSION

Father argues that the juvenile court erred in (1) denying his oral motion to continue the jurisdictional hearing, and (2) sustaining the Department's allegation against him because there was no substantial evidence that father's inattentiveness placed Jonathan at "substantial risk" of "serious physical harm"

5

as required by section 300, subdivision (b)(1).  Because father's second argument has merit, his first argument is moot.

As pertinent here, a juvenile court is empowered to assert dependency jurisdiction over a child if "[t]*he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness*, as a result of" (1) "the failure or inability of his or her parent or guardian to adequately supervise or protect the child," or (2) "the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment."  (§ 300, subd. (b)(1), italics added.)[4]  Courts have construed the italicized language literally:  "'Subdivision (b) means what it says.  Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness.'"  (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 399.)  We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's finding—contains ""'"sufficient facts to support [its] finding[]."'""  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

The juvenile court's exertion of dependency jurisdiction over Jonathan on the basis of father's periodic absences must be invalidated because there is no evidence—let alone substantial evidence—to support its finding that father's absences created a

_____

[4]      This same analysis applies even though the petition we review is a supplemental petition under section 342.  (§ 342, subd. (b) ["Unless otherwise provided by law, all procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section"].)

6

"substantial risk that [Jonathan] will suffer[] serious physical harm." (§ 300, subd. (b)(1).) That is because father's absences left Jonathan in the care and custody of the paternal grandparents. Yet the Department and the juvenile court have repeatedly maintained that Jonathan is *safe* in paternal grandparents' care and custody. The Department found paternal grandparents' home to be "safe" at the outset. More to the point, the Department has repeatedly recommended that Jonathan be placed with the paternal grandparents when detained and removed from father, and the juvenile court has repeatedly followed that recommendation by placing Jonathan with them. These actions belie any notion that Jonathan is at substantial risk of serious physical harm when residing with them. Although the Department at one point states in one of its reports that father left Jonathan "in the home *alone*," that statement is not supported by any evidence and, indeed, was contradicted by the Department's later representation to the court that "father had been leaving the children *with the grandparents*." (Italics added.)

The Department's brief on appeal does not attempt to argue that Jonathan was in substantial danger of serious physical harm. Instead, it points to father's failure to take Jonathan to school and to therapy, and father's apparent use of drugs. To be sure, the record might support a finding that father's conduct is damaging Jonathan's academic prospects, harming his mental wellness, and potentially dimming Jonathan's otherwise bright future. But the Department did not ask the juvenile court to exert dependency jurisdiction on the basis of the possibility that father's inattentiveness put Jonathan at "substantial risk of suffering serious *emotional* damage" (§ 300, subd. (c), italics added), or on the basis that father's "substance abuse" placed

7

Jonathan at "substantial risk" of "serious physical harm."  (§ 300, subd. (b)(1).)  We are not at liberty to uphold dependency jurisdiction on a ground never alleged and proven below.  (*In re V.M.* (2010) 191 Cal.App.4th 245, 253.)

Accordingly, we must reverse the juvenile court's order exerting dependency jurisdiction over Jonathan pursuant to the section 342 petition and removing Jonathan from father's custody.  (E.g., *In re Andrew S.* (2016) 2 Cal.App.5th 536, 544 [invalidating sole jurisdictional finding also invalidates subsequent dispositional order].)  Nothing in our opinion precludes the Department from seeking to plead and prove a basis for dependency jurisdiction on a different basis or with different evidence.

## DISPOSITION

The order is reversed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

8