Filed 9/19/25  In re Nathan S. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re NATHAN S., <br><br> a Person Coming Under the Juvenile Court Law. | B343540 <br><br> (Los Angeles County  Super. Ct. No. 22CCJP04881D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> MARIO S.G., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Syna N. Dennis, Judge Pro Tempore.  Reversed in part, dismissed in part.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

—————————————————

Mario S.G. (Father) appeals from the juvenile court's assertion of jurisdiction over his son Nathan S.S. (born 2021) based on Father's conduct, and from the related disposition order. The court also based those jurisdiction and disposition orders on the conduct of Nathan's mother, N.S.S. (Mother), who is not a party to this appeal.

Mother has an older daughter, T.E.S. (born 2011), who was conceived with another man before Mother and T.E.S. emigrated to the United States in 2016. Mother and Father met in 2020 and thereafter lived together; T.E.S. was part of their household. Mother and Father struggled to control T.E.S.'s behavior, which included skipping school, vaping marijuana, and drinking alcohol. Mother and T.E.S. had numerous arguments over such behavior, in which Father and Nathan were not involved, that included physical violence. Nathan was never physically abused by Mother or Father.

During a dispute over a cellphone on September 28, 2024, Father hit T.E.S. when Nathan was also in the room. Nathan was not touched during the incident. T.E.S. asserted she was fearful of Mother and Father, but stated Mother and Father treated Nathan differently and she was not worried they would abuse him.

2

Father was not deemed a parent or guardian of T.E.S., and the assertion of dependency jurisdiction over T.E.S. is not at issue in this appeal. When asserting jurisdiction over T.E.S., the juvenile court also asserted jurisdiction over Nathan. As to Father, this assertion of jurisdiction was based on a finding that Nathan was at substantial future risk of serious physical abuse from Father because Nathan was present when Father struck T.E.S. on September 28, 2024. We reverse, as no substantial evidence supports this jurisdictional finding. As Father agrees later developments have mooted his appeal of the disposition order, we dismiss that portion of his appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

We limit our summary of the factual and procedural background to what is necessary to explain our disposition. Although T.E.S. is not the subject of this appeal, and Mother is not a party to it, we include facts from the proceedings involving them where necessary for context.

A. **Facts Leading to the Filing of the Dependency Petition**

1. *Family Dependency History*

On September 19, 2020, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging emotional abuse of T.E.S. based on the child witnessing Mother committing domestic violence on her boyfriend.[1] Criminal history records showed Mother was

---

[1] The referral history indicates the boyfriend was likely Father, as the parents were in a relationship in 2020 and T.E.S.

arrested for inflicting corporal injury on a spouse or cohabitant that same day.  On September 23, 2020, DCFS received another referral regarding this same incident, as well as a new allegation that Mother physically forced T.E.S. into a restroom by grabbing her arm.  DCFS closed both referrals as inconclusive.

On November 21, 2020, DCFS received a referral alleging Mother neglected T.E.S. by leaving her at a babysitter's home for days.  DCFS referred Mother to parenting services and domestic violence classes, and closed the referral as inconclusive.

On August 23, 2021, DCFS received a referral that T.E.S. was suffering emotional and physical abuse.  When interviewed, T.E.S. described an incident where she was in Father's way, he touched her shoulder, and Father was later arrested for reasons T.E.S. did not understand.  Criminal history records showed Father was arrested for spousal battery on August 22, 2021, and not anything involving a minor child.  DCFS deemed the allegations unfounded.

On December 2, 2021, DCFS made an unannounced visit to meet with T.E.S. after learning she had called the police when Mother and Father were arguing.  Mother, Father, and T.E.S. all agreed a verbal argument occurred but denied any physical altercation.  The matter was closed as inconclusive.

On November 9, 2022, DCFS received a referral alleging that Mother hit T.E.S. with a wire on her arm and leg, and that Nathan was at risk of abuse.  DCFS substantiated the allegation, promoted it to a family maintenance case, and filed a Welfare and

referred to the boyfriend as "Alexander," which is Father's middle name and the name under which his criminal history appears.

4

Institutions Code[2] section 300 petition on behalf of T.E.S. and Nathan on December 16, 2022.  The juvenile court dismissed the petition without prejudice on February 15, 2023.

### 2. *August 29, 2024 Referral*

On August 29, 2024, DCFS received a referral alleging that T.E.S. had told the reporting party that Mother had hit her the day before with a wooden back scratcher, leaving visible golf-ball-sized bruises.  The referral also said that T.E.S. had reported Mother had hit her on August 27 with only Mother's hands, and that Father had laid T.E.S. on the couch and began to " 'choke her,' " causing pressure in her chest and difficulty breathing.  When interviewed by DCFS, T.E.S. said Mother had hit her with the back scratcher after learning that T.E.S. was drunk.  Later investigation indicated that T.E.S. had consumed a significant amount of tequila and ended up being hospitalized for alcohol intoxication.  T.E.S. told DCFS that Father had not physically disciplined her.  When asked about the mention of choking in the referral, T.E.S. said she saw Father " 'putting me down on the couch but I don't know [if the difficulty breathing] was drunkenness[,]' further stating she was intoxicated and isn't sure."  T.E.S. said Father encouraged Mother to use physical discipline against T.E.S.

T.E.S. denied that Mother and Father treated Nathan the way they treated her and denied any physical abuse of Nathan.  T.E.S. reported that Mother and Father often drank alcohol and hit each other.  One of Mother's friends reported seeing visible bruises on Mother's legs, and the parents' apartment manager

---

[2] Unspecified statutory references are to the Welfare and Institutions Code.

reported Mother and Father drank on the weekends and argued. Mother and Father denied any domestic violence.

DCFS found the allegations of physical abuse and general neglect of T.E.S. and Nathan by Mother to be substantiated, and the allegations of physical abuse by Father to be inconclusive.

3.      *September 28, 2024 Referral*

On September 28, 2024, DCFS received another referral alleging T.E.S. was a victim of general neglect by Mother and of physical abuse by Mother and Father.  The referral stated that T.E.S. had called 9-1-1 after Father had slapped her face.  Mother and Father reportedly took Nathan and fled the home when they learned T.E.S. had called 9-1-1, and T.E.S. was placed in protective custody.

T.E.S. told the police that adults in the home had been drinking beer.  T.E.S. said she was watching videos on her cell phone when Father grabbed the phone "without prompting" and smashed it to the ground.  T.E.S. said Father then slapped the left side of her face with an open hand twice, grabbed her by the forearms, and dragged her off the sofa where she was sitting.  Nathan was sitting nearby when this occurred.  T.E.S. said Mother joined in and began to pull her hair.  T.E.S. said she had "no idea" why the attack took place.  T.E.S. then used another phone to call 9-1-1.  Police spoke to responding paramedics, who examined T.E.S. and found no indications of physical trauma.

When DCFS interviewed T.E.S., she indicated Mother pulled her hair and Father slapped her twice "for nothing."  She reported past incidents involving abuse by Mother stemming from issues such as T.E.S. drinking, vaping, dating, and having behavioral problems at school.  T.E.S. said she was afraid of Mother and Father.  T.E.S. denied ever seeing Nathan harmed

6

but was extremely concerned because of the unprovoked attack on September 28, 2024 in his presence. DCFS observed Nathan to be preverbal, ambulatory, friendly and playful, and to have no marks or bruises indicative of abuse.

Mother told DCFS that T.E.S.'s behavior after she ended the seventh grade in May 2024 had "become atrocious and dangerous," including vaping marijuana, consuming alcohol, and not attending class. Mother said T.E.S. attacked Father and broke his phone, after which both T.E.S. and Father were "whaling" their arms at one another defensively. Mother acknowledged using poor judgment by not engaging with law enforcement after T.E.S. called 9-1-1, but said she was exasperated by T.E.S.'s behavior and was worried she and Father would get in trouble. Mother denied Nathan had ever been harmed.

Father told DCFS that he did not slap T.E.S. but did use his arms and hands to try blocking her unprovoked blows on him. Father said T.E.S. broke his phone, threatened to send him to jail, and then called 9-1-1. Like Mother, Father regretted the decision not to interact with law enforcement. Father reported that T.E.S.'s behavioral issues had escalated since May 2024, when she began a relationship with a boyfriend. Father said this led to numerous calls from the school related to attendance issues, vaping, and alcohol consumption. Father believed T.E.S.'s behavior had become dangerous, and that she required mental health services. Father denied ever harming T.E.S. or Nathan.

## B.  Dependency Petition and Initial Hearings

On October 1, 2024, DCFS filed a section 300 petition on behalf of T.E.S. and Nathan. The petition did not name Father as an alleged or presumed father of T.E.S; he was identified only

as Nathan's father. The petition alleged that Mother had physically abused T.E.S. and that this abuse placed Nathan at risk of serious physical harm (counts a-1, b-1, and b-2). As to Father, the petition asserted he struck T.E.S. on September 28, 2024, and that this physical abuse placed Nathan at risk of serious physical harm (count b-2).[3]

At the initial hearing on October 2, 2024, counsel for Father and Mother, along with minors' counsel, all requested Nathan be released to Mother and Father.[4] Counsel for the minors stated that "all parties have been consistent about Nathan's safety with his parents. [DCFS] has made observations of him multiple times and has consistently reported no injuries or concerns. There is a prior referral history of physical abuse and potential [domestic violence] between [Mother] and [Father], but none of those referrals have included Nathan. The parents have made it clear in the reports that they have struggled to parent and discipline [T.E.S.], but Nathan is differently situated . . . . Even [T.E.S.] said in the report that her brother has not been injured because they treat him differently. I did speak with [T.E.S.] today, and she confirmed that she believes Nathan would be safe with his parents and that . . . she would hope her brother can return home."

DCFS recommended Nathan be detained, and the court agreed. However, the juvenile court scheduled a prerelease

---

[3] The petition contained further allegations which the court later struck because DCFS did not sustain its burden of proof. We accordingly omit discussion of them.

[4] Minors' counsel requested the court detain T.E.S. from Mother and Father.

investigation (PRI) to consider releasing Nathan to the parents' custody with a safety plan in place. On October 15, 2024, the juvenile court held the PRI hearing. Over DCFS's objection, the court released Nathan to his parents' custody with a safety plan in place.

### D. Additional Investigation Before the Adjudication and Disposition Hearing

DCFS conducted further investigation as memorialized in a jurisdiction/disposition report. T.E.S. and Mother both told DCFS that Nathan was in the room during the altercation on September 28, 2024. The report contained further information about prior physical abuse involving only T.E.S., and stated that her foster mother was having issues with T.E.S. skipping classes and not following rules. DCFS made an unannounced visit to the parents' home, and found Nathan to be clean, appropriately dressed, and with no visible marks or bruises. Nathan appeared to have a possible speech delay, and DCFS referred him to the Regional Center. DCFS observed Nathan to be fearful of the social worker assigned to provide services to the family. Both Mother and Father thought this might be because Nathan was afraid the social worker was there to take Nathan away.

DCFS believed the court should exercise jurisdiction over Nathan because he was at risk due to the parents not "chang[ing] and address[ing] the underlying causes of their abusive behavior" and not participating in recommended services from the prior referral investigations.

## E.    The Adjudication and Disposition Hearing

The court held a combined adjudication and disposition hearing on December 2, 2024.[5]  The court sustained counts a-1, b-1, and b-2 as alleged against Mother and count b-2 as alleged against Father, and dismissed all other counts.  As the sustained counts centered on physical abuse of T.E.S., the court initially believed that its dismissal of the remaining counts meant "Nathan is no longer a part of this petition."  After DCFS pointed out that sustained counts also alleged Nathan was at risk, the court corrected itself and noted that Nathan was not dismissed.

With regard to disposition for Nathan, the court ordered him released to the parents' home.  Father was ordered to participate in family preservation services, counseling, and other services as part of his case plan.

## F.    Post-adjudication and Disposition Hearing Events

Father filed a timely notice of appeal from the jurisdiction and disposition orders on January 15, 2025.[6]  On July 30, 2025, the juvenile court terminated jurisdiction over Nathan, granting Mother and Father joint legal and physical custody of the minor.

---

[5] The hearing was originally scheduled for November 19, 2024, but had to be postponed because T.E.S. was refusing to return to her placement, and DCFS needed to assess emergency placement options for her.

[6] The notice of appeal erroneously states that Father is appealing jurisdictional findings and orders made on December 10, 2024, as opposed to December 2, 2024.  As this error has not prejudiced either party in arguing the issues before the court, we disregard it.

## DISCUSSION

Father acknowledges that, in light of the exit order, any challenge to the dispositional order is moot.  As Father does not argue we should address the now moot dispositional order, we dismiss his appeal from that order.  (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722 [" 'When events render a case moot, the court . . . should generally dismiss it' "].)

As for jurisdiction, Father does not seek to challenge the juvenile court's assertion of jurisdiction over T.E.S., who is not his child.  Father challenges only the jurisdictional finding against him involving Nathan.

### A. Father's Appeal of the Jurisdiction Order is Not Moot

The juvenile court asserted jurisdiction over Nathan based on conduct by both Mother and Father, and Mother has not appealed.  Accordingly, the juvenile court's assertion of jurisdiction over Nathan was proper regardless of the outcome of this appeal (*In re D.P.* (2023) 14 Cal.5th 266, 283), and in any event the juvenile court is no longer asserting jurisdiction. Father asserts his appeal is not moot because it will differentiate between him being an offending or nonoffending parent.  DCFS does not oppose us reaching the merits of Father's appeal because the sustained allegation against him involves physical abuse.

The Penal Code requires that DCFS forward substantiated reports of child abuse to the California Department of Justice for inclusion in the Child Abuse Central Index (CACI).  (Pen. Code, § 11169, subd. (a).)  The allegations here involve child abuse, and if DCFS was to forward the information, the juvenile court's finding would estop Father from challenging his inclusion in

11

CACI.  (*Id.*, subd. (e).)[7]  Because of the likelihood our disposition will impact Father's legal status going forward, Father's jurisdictional challenge is not moot and is justiciable.

## B.    Relevant Law and Standard of Review

The sole sustained allegation in the petition against Father (count b-2) was made pursuant to section 300, subdivision (b)(1)(A).[8]  To pass muster, this required evidence that Nathan was at substantial risk of suffering serious physical harm due to Father's failure to supervise or adequately protect Nathan. (*Ibid*.)  "A jurisdictional finding under section 300, subdivision

---

[7] This case is accordingly distinguishable from *In re D.P.*, where the father failed to show the allegations against him were reportable to CACI.  (*In re D.P.*, *supra*, 14 Cal.5th at pp. 281-282.)  We recognize the ultimate resolution of this issue is currently pending before our Supreme Court.  (*In re S.R.* (Aug. 21, 2024, B326812), review granted Sept. 11, 2024, S285759 [granting review to decide:  "(1) When a juvenile court's jurisdictional findings establish that a parent committed an offense that the law requires be reported to [CACI], should an appellate court presume, on an otherwise silent record, the offense has been or will be reported to CACI?  (2) If unrebutted, is this presumption sufficient to avoid dismissal for mootness?"].)  DCFS does not state whether it has reported Father, but pending further guidance from our high court we presume on the facts before us that DCFS will report the offense to CACI and that this is sufficient to avoid dismissal of the appeal for mootness.

[8] The b-2 count, which was alleged against both Mother and Father, also included an allegation pursuant to section 300, subdivision (b)(1)(B) that Mother failed to protect T.E.S. from Father's conduct.  The failure to protect allegation was made only against Mother; there was no allegation that Father failed to protect Nathan from Mother.

12

(b)(1), requires DCFS to demonstrate . . . three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)  Domestic violence involving someone other than the child at issue can constitute neglectful conduct because of "the substantial risk [to the child] of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)  For an assertion of jurisdiction to stand, "a significant risk to the child must exist ' "at the time of the jurisdiction hearing." ' " (*In re J.N.* (2021) 62 Cal.App.5th 767, 775.)

We review jurisdictional findings for substantial evidence in light of the entire record.  (*In re I.C.* (2018) 4 Cal.5th 869, 892.) " 'To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.' " (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)  "We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)  "[W]e draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm if the order is supported by substantial evidence even if other evidence supports a contrary conclusion." (*Ibid*.)

C.    **Substantial Evidence Does Not Support the Jurisdictional Finding Against Father**

To assert jurisdiction over Nathan based on count b-2 as alleged against Father, there had to be substantial evidence establishing all three of the following: (1) Father physically

abused his partner's daughter T.E.S. when Nathan was present; (2) there was a substantial risk that Father would abuse T.E.S. in the future; and (3) this substantial risk of future abuse of T.E.S. by Father created a concomitant risk that Nathan would suffer serious physical harm.

Father does not contest that substantial evidence supports the court's conclusion that he physically abused T.E.S. on September 28, 2024, and that Nathan was present when the abuse occurred. He instead argues there was insufficient evidence to support a conclusion that he would abuse T.E.S. in the future in a way that put Nathan at substantial risk of serious physical harm from Father. We agree.

There is no evidence Nathan was ever physically abused by either parent. There is no evidence that Father struck T.E.S. on any occasion when Nathan was present other than September 28, 2024. Indeed, the only other time where it was claimed Father had struck T.E.S. occurred on August 29, 2024; the party making a referral to DCFS said T.E.S. reported Father had possibly sat on T.E.S. and choked her, but when asked directly T.E.S. did not confirm this had happened even though she was certain that Mother had hit her. Even if we assume Father harmed T.E.S. on August 29, there is no evidence Nathan was present. T.E.S. also stated that Father treated Nathan differently than her, and that Nathan was not at risk of harm. Although T.E.S. did state she was "extremely concerned" after the September 28 incident took place in Nathan's presence, she later re-confirmed through her counsel that she did not believe Nathan was at risk.

DCFS seeks to bolster its showing that Father posed a future risk of harm to Nathan by asserting other evidence demonstrated domestic violence occurred between the parents.

First, the petition alleged no such conduct. Accordingly, Father had no notice or opportunity to defend against it, and it would be improper to sustain the petition based on such unalleged conduct. (See, e.g., *In re Andrew S.* (2016) 2 Cal.App.5th 536, 544; *In re Wilford J.* (2005) 131 Cal.App.4th 742, 751.) Second, even if it was proper to consider that unalleged conduct, DCFS points to no evidence that Nathan was ever present during any such domestic violence. Any risk of physical danger to Nathan for purposes of section 300, subdivision (b)(1) was therefore minimal. (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 606.)

DCFS contends that Mother and Father were struggling to address T.E.S.'s behavioral issues, that Mother's frequent physically abusive reactions to that behavior were escalating, and that Mother's escalations posed risk to Nathan. We do not quarrel with these claims, but they show only that substantial evidence supported the court's assertion of jurisdiction over Nathan based on Mother's conduct. This appeal concerns Father, not Mother. There is no substantial evidence that Father's conduct was escalating or that his actions against T.E.S. (an older and rebellious teenager very differently situated than Nathan) on one day in September 2024, when Nathan was present (or what occurred on August 29, 2024, when Nathan was not present), posed a substantial risk of serious future harm to Nathan. Accordingly, on this record, Nathan's presence during one incident between Father and T.E.S., in which T.E.S. suffered no visible physical injury, was insufficient to support a jurisdictional finding that Father posed a substantial risk of future serious harm to Nathan.

## DISPOSITION

The juvenile court's order asserting jurisdiction over Nathan as against Father is reversed. The appeal of the disposition order is dismissed as moot.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

BENDIX, Acting P. J.

M. KIM, J.

16